## Ex parte PLASTINO.

(District Court, W. D. Washington, N. D.   September 20, 1916.)

### No. 3393.

1. ALIENS ☞54—HABEAS CORPUS—FUNCTION OF COURT.

The function of the court, in habeas corpus by one ordered deported by the Department of Commerce and Labor under a charge of being an alien unlawfully in the country because of deriving benefits from the earnings of a prostitute, is to ascertain whether he was accorded a fair hearing and whether there was any evidence on which to predicate the charge.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ☞54.]

2. ALIENS ☞54—DEPORTATIONS—PROCEEDINGS.

Under the rule of the Department of Commerce and Labor, and the law, one accused as an alien unlawfully in the country, because of deriving benefits from the earnings of a prostitute, must be notified of the charge against him, and have opportunity to inspect the warrant or arrest and the evidence on which it is issued, and to be advised, before he is examined, of his right to have counsel, to the end that his interests may be properly safeguarded in the hearing.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ☞54.]

3. ALIENS ☞54—DEPORTATION—EVIDENCE.

The order of deportation of an alien, under a charge of being an alien unlawfully in the country because of deriving benefits from the earnings of a prostitute, must be supported by the evidence at the hearing, and the charge must be established by legal evidence.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ☞54.]

4. ALIENS ☞54—DEPORTATION—EVIDENCE.

Under the record in proceedings for deportation of one as an alien unlawfully in the country because of receiving the earnings of prostitutes, *held*, on habeas corpus, that there was no evidence to support the charge; the statement of the inspector being his conclusion as to testimony in another case.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ☞54.]

Petition of Sam Plastino for writ of habeas corpus.   Petitioner ordered discharged.

Beeler & Sullivan and Joseph M. Glasgow, all of Seattle, Wash., and Tolman & King, of Spokane, Wash., for petitioner.

Clay Allen, U. S. Dist. Atty., and Albert Moodie, Asst. U. S. Dist. Atty., both of Seattle, Wash., for government.

NETERER, District Judge.   The petitioner, aged 30 years, whose father declared his intention to become a citizen of the United States in 1900, came to the United States in 1897, and has since been a resident therein.   On the 12th of January, 1912, he was arrested under a warrant issued by the Acting Secretary of Labor, charging "that the said alien is unlawfully within the United States, in that he

has been found receiving, sharing in, or deriving benefits from the earnings of a prostitute or prostitutes," and thereafter ordered deported. An appeal taken to the Secretary of Commerce and Labor confirmed this order, and warrant of deportation was thereupon issued, execution of which was suspended pending discharge of the prisoner from the federal prison, where he had been committed on conviction on an indictment under the Mann Act (Act June 25, 1910, c. 395, 36 Stat. 825 [Comp. St. 1913, §§ 8812–8819]). Petitioner files this petition for writ of habeas corpus, alleging that he is in custody and about to be deported, and that he did not have a fair trial, in that he was not permitted to inspect the warrant of arrest or any of the evidence upon which it was issued, nor advised of his right to have counsel, and that there is no evidence upon which to base a warrant of deportation.

[1-3] The function of the court in a proceeding of this kind is to ascertain whether petitioner has been accorded a fair hearing, and also whether there is any evidence upon which to predicate the charge made. Under the rule of the Department of Commerce and Labor, and the law, the accused must be notified of the charge against him, and have opportunity to inspect the warrant of arrest and the evidence upon which it is issued, and be advised of his right to have counsel, to the end that his interests may be properly safeguarded in the hearing by one specially concerned therewith, and in accordance with established, recognized rules of procedure. The order of deportation must be supported by the evidence at the hearing, and the charge must be established by legal testimony.

[4] Upon this hearing the petitioner testified that he was not advised of the charge against him, that he requested permission to consult counsel, that at the time he had been convicted of a felony and had counsel engaged, and that his counsel was in the city within a day or so. His testimony is supported by the brother of the accused, who stated that counsel had been employed, and also stated that he did not decline to employ counsel for the accused, and that he was abundantly able to do so. Much appears in this testimony which has no place there. The petitioner may be a moral degenerate, and from this record as it stands is unfit to be a citizen of the United States; but the charge in the warrant is *receiving, sharing in, or deriving benefits from the earnings of a prostitute or prostitutes,* and the testimony upon that is as follows:

"Q. You were convicted December 7, 1911, on the charge of having transported Goldie Cardiff from Seattle to San Francisco for the purpose of prostitution? A. Yes. * * * Q. How long did you live with Goldie Cardiff? A. Never. She used to come around me and my place and show money. Q. Did you ever receive earnings from her? A. No. Q. Did she ever give you money? A. No. Q. Do you know Ethel Richards? A. Yes; she never lived with me. Q. Did she pose as your wife in Seattle and Spokane? A. No. Q. Was she a prostitute? A. No. Q. Did you ever receive any of her earnings? A. No; I threw away money. I didn't care for their earnings. Q. Do you know Grace Howard? A. Yes; that is the same party. Q. You were living with another prostitute at Seattle, were you not? A. No; I had them in my rooms when I went out for a good time. Q. What is your business? A. A merchant in Seattle. In Spokane, at 322 Main street, I had a

pool room for about one year, me and my brother. Q. You heard the testimony of Goldie Cardiff in the court in the trial of your case, in which she testified she turned money over to you? A. Yes; it wasn't true."

### Statement by Inspector Fisher:

"I examined the naturalization records in the United States District Court for the Eastern District of Washington, and find that the records show that Sam Plastino claimed he was born in Alteria, Italy, Sept. 7, 1886, and came from Naples, Italy, on the steamship Abrumvra to the port of New York about the 10th day of June, 1897, and declared his intention to become a citizen of the United States before W. H. Hare, clerk of the United States District Court, at Spokane, Wash., March 22, 1911. Sam Plastino was convicted, after a hearing in the United States District Court at Tacoma, Wash., for violating the White Slave Traffic Act, in that he assisted in the transportation of one Goldie Cardiff, from Seattle, Wash., to San Francisco, Cal., for purposes of prostitution. The evidence adduced at the hearing showed that Sam Plastino had received the earnings of Goldie Cardiff, prostitute, for several years; that he had also received the earnings of two other prostitutes prior and subsequent to his meeting Goldie Cardiff."

At the conclusion of the examination of the petitioner by the inspector appears the following:

"Q. You have a right to be represented by counsel, if you desire. A. If my brother in Spokane will get a lawyer for me, I want a lawyer. If he will not, I don't care for any. Q. Then, if your brother in Spokane does not see fit to retain a lawyer for you, do you waive your right to be represented by counsel? A. Yes, sir. Q. By your brother, you mean Joe Plastino? A. Yes, sir."

This appears in different colored ribbon and prior to the certificate of the party taking the testimony. This was, in my judgment, inserted after the testimony was completed, for if the ribbon had been changed just at the time that this statement commenced, it would not have been changed back to the old ribbon for the certificate, but the record would have been in the same colored ribbon from the time the first change was made. The statement may have been made, and not inserted at the time; but the fact that it is in different colored ribbon indicates that it was not inserted at the time, and raises a doubt as to whether the statement was made. It was the right of the accused to be advised of the privilege of counsel before he was examined, and it is admitted that this information, if given, was not given until the examination was concluded. The statement of the inspector in this record, unsupported by oath, is not testimony. Even though it had been given under oath, it is not testimony which would be admitted in any court, as it is the inspector's conclusion as to certain testimony in another case. Eliminating this from the testimony, there is no evidence which supports the charge. All of the inquiries propounded to the petitioner bearing upon the receipt of earnings of prostitutes were answered in the negative, excepting the one with relation to the transportation, and the court, I think, must recognize that there are many convictions under the Mann Act where the earnings are not the motive for the transportation.

I am fully persuaded that the accused did not have a fair trial, and that the petitioner's conviction was not predicated upon testimony produced with relation to the charge made, but rather upon many other

charges against the accused, and which show him to be a very undesirable person. But such fact does not take from him the rights which are guaranteed, and all of the facts with relation to this, or any other offense, should be presented in the manner which the law and justice requires. Justice never hesitates in according a fair hearing; on the contrary, guarantees it to the worst criminal. I think, under the record in this case, the petitioner should be discharged.

The petitioner will be discharged, unless the government appeals within 20 days, and, if appeal is taken, may be released on $1,000 recognizance, pending the review by the appellate court.