**UNITED STATES ex rel. TOMASSO v. FLYNN, District Director of Immigration.**

District Court, W. D. New York. October 27, 1927.

**1. Aliens �köm54(10)—Order of deportation must be predicated on finding of alienage.**

Alienage is jurisdictional fact, and an order of deportation must be predicated on finding of that fact.

**2. Aliens �köm54(7)—Burden of proving alienage rests on government, and if department makes finding of essential fact, unsupported by evidence, court may intervene by writ of habeas corpus.**

Burden of proving alienage rests on government, and if department makes finding of an essential fact, which is unsupported by evidence, court may intervene by writ of habeas corpus.

**3. Aliens �köm54(7)—Prisoner arrested in deportation proceedings is not protected by presumption of citizenship, and cannot stand mute at hearing and put government on proof.**

A prisoner arrested in deportation proceedings is not protected by presumption of citizenship, and he cannot stand mute at hearing and put government on its proof.

**4. Habeas corpus �köm85(1)—Alienage of petitioner held amply proved for purposes of habeas corpus proceeding to secure release under deportation proceedings.**

In habeas corpus proceeding to secure petitioner's release under deportation proceedings, where there was no positive assertion of citizenship in United States by petitioner, and denial of his birth in Italy was evasive, fact of alienage was amply proved for purposes of proceeding.

**5. Aliens �köm54(7)—In deportation proceedings, rules of evidence need not be followed with same strictness as in courts.**

Rules of evidence need not be followed with same strictness in deportation proceedings as in courts.

**6. Aliens �köm54(8)—Record of alleged alien's conviction in state court was properly received in deportation proceedings (Penal Law N. Y. § 1146).**

Record of alleged alien's conviction in County Court of Steuben County, N. Y., under Penal Law N. Y. (Consol. Laws, c. 40) § 1146, relating to keeping disorderly houses, was properly admitted in deportation proceedings.

**7. Aliens �köm54(8)—Affidavits used in prosecution of alleged alien in state court held properly admitted in deportation proceedings, where alien was represented by counsel and did not ask to have makers of affidavits produced.**

In proceedings for deportation of relator, affidavits used in prosecution of relator in state court *held* properly admitted, since relator, represented by counsel, did not ask to have makers of affidavits produced and made no demand for their cross-examination, and did not request extension of time in which to produce testimony refuting statements in affidavits, and since they were part of record of proceedings of conviction.

**8. Aliens �köm54(9)—Evidence justified finding in warrant of deportation of relator's having been found connected with management of house of prostitution.**

Evidence *held* to justify finding in warrant of deportation that relator had been found connected with management of house of prostitution, and had been found receiving, sharing in, or deriving benefit from earnings of prostitute.

Habeas Corpus. Proceeding by the United States, on the relation of Tony Tomasso, against William Flynn, District Director of Immigration, in charge at Buffalo, N. Y., to secure petitioner's release under deportation proceedings. Petition dismissed.

Rogers & McManus, of Corning, N. Y. (Thomas J. McKenna, of Buffalo, N. Y., of counsel), for petitioner.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Roy P. Ohlin, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for respondent.

ADLER, District Judge. A warrant for the deportation of the relator was issued on September 28, 1926, on the ground that he had been found connected with the management of a house of prostitution, and that he had been found receiving, sharing in, or deriving benefit from the earnings of a prostitute. He was given two hearings pursuant to notice, at both of which he was represented by counsel. The relator was examined at length on the hearings. An immigration inspector testified on the subject of the place of birth of the relator. There was offered in evidence the record of conviction of relator in the County Court of Steuben County, duly certified, and a certified copy of the record of the court proceedings. The record of the court proceedings included certified copies of affidavits made by various persons, setting forth the character of the place maintained by the relator, which affidavits were the basis of the information against relator in .the criminal proceeding in Steuben county, which resulted in his indictment by the grand jury of that county and subsequent conviction. Relator pleaded guilty to the indictment and was sentenced to a term of imprisonment and the payment of a fine.

Relator seeks to obtain his release on the grounds: First, that the government has failed to prove that he was born in Italy, or is an Italian subject; second, that the hearings were improperly and illegally conducted, and that the record of his conviction in a criminal action should not have been received, and that the affidavits of various persons were improperly received in evidence, and could not be considered for the reason that the makers of the affidavits were not produced, and the relator had no opportunity to cross-examine them; third, he further claims that a plea of guilty under section 1146 of the Penal Law of New York state (Consol. Laws, c. 40), which is the section relating to "keeping disorderly houses," cannot be construed as an admission that he was connected with the management of a house of prostitution, or that he had been found receiving, sharing in, or deriving benefit from the earnings of a prostitute, for the reason that this section may apply as well to common bawdy or gambling houses.

[1, 2] 1. Alienage is a jurisdictional fact, and an order of deportation must be predicated upon a finding of that fact. The burden of proving alienage rests upon the government, and if the department makes a finding of an essential fact, which is unsupported by evidence, the court may intervene by the writ of habeas corpus. In the case of the United States ex rel. Bilokumsky v. Todd, 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221; the evidence of alienage there present was similar to that presented in this case. In the Bilokumsky Case the prisoner was interrogated by an immigration inspector, and in answer to the questions put to him he admitted he was an alien. Thereafter upon the hearing he refused to testify on the subject. In that case the court, in its opinion delivered by Mr. Justice Brandeis, said that conduct which forms a basis for inference is evidence. Silence is often evidence of the most persuasive character. To defeat deportation it is not always enough for the prisoner arrested to stand mute at the hearing and put the government upon its proof.

In the present case, Tomasso, when interrogated by the agent, Reback, prior to the hearing, said that he was 41 years of age, was born in Italy, and came to the United States in 1902. Upon the hearing Tomasso was represented by counsel, and the agent, Reback, was a witness, and could have been cross-examined upon this as well as other matters by the petitioner's counsel. The petitioner, when questioned as to whether he made the statement above quoted to the immigration agent, replied, "I don't remember." The certified copy of the record of Tomasso's conviction for keeping a disorderly house, under section 1146 of the Penal Law, at Hornell, N. Y., December 8, 1924, has the following language: Defendant, on being sworn, says his name is "Tony Tomasso; occupation, restaurant keeper; age, 40 years; born in Italy, and resides at Corning, New York."

[3, 4] Two separate hearings were held, at both of which Tomasso was interrogated as to his birth and citizenship. A careful examination of his testimony discloses that there is no positive assertion of citizenship in the United States by the petitioner, and the denial of his birth in Italy is evasive. His answers to all questions relative to his birth and citizenship were either evasive or contradictory. "A prisoner arrested in deportation proceedings is not protected by presumption of citizenship, and he cannot stand mute at the hearing and put the government upon its proof." Bilokumsky v. Todd, supra. I am convinced, from a care-

ful examination of the evidence, that the fact of alienage is amply proved for the purposes of this proceeding.

[5, 6] 2. It is well settled that in deportation proceedings the rules of evidence need not be followed with the same strictness as in the courts. Svarney v. United States (C. C. A.) 7 F.(2d) 515; United States v. Uhl (C. C. A.) 266 F. 34, 39; United States v. Hughes (C. C. A.) 299 F. 99; Ghiggeri v. Nagle (C. C. A.) 19 F.(2d) 875. The record of relator's conviction in the County Court of Steuben County was properly received. Svarney v. United States, supra; Ex parte Plastino (D. C.) 236 F. 295; United States v. Uhl (C. C. A.) 266 F. 34, 39. The fact of his conviction was testified to by him at the hearing on June 9, 1926. The relator was asked:

"Q. Isn't it a fact that September 13, 1924, you were arrested for keeping a disorderly house, and on December 8, 1924, you pleaded guilty before Judge Brown, Hornell, N. Y., to the charge of violation of section 1146, New York State Penal Law, and you were fined $75 with a jail sentence to be deferred to May term of 1925, and on February 2, 1925, you were again arraigned before Judge Brown at Bath, N. Y., and sentenced to serve 60 days in the Steuben county jail at Bath, N. Y.? A. Yes."

[7] Certified copies of the certificates of William B. Clark, special deputy clerk, dated Hornell, September 8, 1924, of William B. Clark, clerk, dated February 2, 1925, of John C. Wheeler, city judge of the city of Corning, N. Y., dated October 24, 1924; the affidavit of Harriett Brown, sworn to October 10, 1924, of Charles B. Hanmer, chief of police of the city of Corning, N. Y., upon which the warrant of arrest was issued, were all offered and received as part of the record of conviction.

Relator contends that these and other affidavits are improperly in the record and cannot be considered, that the persons who made the affidavits were not produced so they could be cross-examined by the relator, that by the government's failure to produce the makers of these affidavits the relator was denied a fundamental right, and that the matters stated in the affidavits could not be used against him.

The affidavits were admissible in the proceedings under the authority of United States v. Uhl (C. C. A.) 266 F. 34, 40. It is true no cross-examination of the makers of the affidavits was had, as they were not produced at the hearing. The relator, who was represented by two counsel, did not ask to have them produced, and made no demand for their cross-examination. Nor did he make a request for an extension of time in which to produce testimony in refutation of the statements in the affidavits.

The first hearing was held June 9, 1926, and at that hearing the relator was questioned on all of the matters set forth in the various affidavits, and the affidavits were referred to by name and date. At the close of that hearing the attorneys for the relator offered no testimony, and stated merely that they would submit a brief. A subsequent hearing was held on August 6, 1926, at which the same counsel appeared, and at the close of that hearing the inspector asked the counsel whether they had any witnesses, and counsel answered, "No witnesses." No effort was made on the part of the relator to discredit statements in the affidavits. For these reasons, and because they are a part of the record of proceedings of conviction, under the rules of the admission of evidence applicable to proceedings of this character, I believe that these affidavits were properly admissible.

[8] 3. The evidence that relator had been found connected with the management of a house of prostitution, and that he had been found receiving, sharing in, or deriving benefit from the earnings of a prostitute, does not in this case rest solely upon his plea of guilty to keeping a disorderly house. The record of his conviction in the state court, properly introduced in evidence, includes the information, affidavit of the chief of police, and the affidavit of one Harriett Brown, in all of which papers the nature of the disorderly house was particularly specified. In addition to this, the testimony at the hearing of June 9, 1926, given by the relator at page 11, includes the following question and answer: "Inspector Lehrhaupt to alien: Q. How many times were you arrested for keeping a house of prostitution or house of assignation? A. Only that one time."

In People ex rel. Penny v. Board of Excise, 17 Misc. Rep. 98, 40 N. Y. S. 741, the court used the following language: "The relator contends that keeping a disorderly house does not necessarily imply that relator had committed the acts charged against him, and therefore his plea of guilty of keeping a disorderly house was not evidence that he had committed any act which authorized a revocation of his license. * * * I think keeping a disorderly house necessarily implies keeping a place where persons are permitted to meet for unlawful sexual intercourse; but, even if this were not so, the oral

proof clearly identified the acts as of that nature."

I conclude that there was evidence before the Commissioner to justify the finding in the warrant of deportation.

The petition for a writ of habeas corpus is dismissed.