UNITED STATES of America,
Plaintiff,

v.

Liborio RANGEL–PEREZ, Defendant.

Cr. No. 25568–CD.

United States District Court
S. D. California,
Central Division.

Dec. 9, 1959.

Laughlin E. Waters, U. S. Atty., and Robert J. Jensen, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Jerome Schwimmer, Los Angeles, Cal., for defendant.

MATHES, District Judge.

Defendant was convicted on June 9, 1943, after trial in this Court, of the crime of illegal entry into the United States from the Republic of Mexico. [See Docket No. 6634–SD (Crim.).] The 1943 indictment alleged: "That on or about the 12th day of August, 1941 * * * [the defendant], who is a Mexican alien * * * was deported from the United States to Mexico * * * [and] on or about the 5th day of February, 1942 * * * did knowingly, wilfully, unlawfully, and feloniously * * *

enter the United States * * *." See 8 U.S.C.A. § 180 (1940).

Thereafter defendant was again deported to Mexico. Now he is again on trial before this Court, having waived trial by jury, charged with the felony of being "[an] alien who * * * has been * * * deported * * * and thereafter * * * is at any time found in, the United States * * *." [8 U.S.C.A. § 1326.] Specifically, the indictment here charges that the "Defendant, Liborio Rangel-Perez, who is an alien, on or about March 25, 1948, was deported from the United States to Mexico through the port of El Paso, Texas and thereafter, on or about January 3, 1957, defendant was found in * * * the Southern District of California."

To prove defendant's status as an alien, the Government has produced: (1) substantially the same evidence which was relied upon to prove alienage and to procure the 1943 conviction of illegal entry; (2) the record of defendant's 1943 conviction, including the finding and adjudication that defendant's status at the time of his conviction on June 9, 1943, was that of an alien, a person "not a citizen or national of the United States" [see 8 U.S.C.A. § 1101(3), (21), (22)]; and (3) a baptismal record recently procured, and authenticated by deposition of the custodian, taken in Leon, State of Guanajuato, Mexico; which deposition was obtained pursuant to a commission issued out of this Court by virtue of 18 U.S.C. §§ 3492-3496.

Decision has been reserved until now of defendant's motion to strike all evidence of the 1943 adjudication of his alienage which was received at the trial, upon the ground that in the prosecution at bar he is entitled to a trial de novo as to each essential element of the offense of which he now stands charged, including that of his nationality status.

Defendant has also moved to strike the custodian's deposition authenticating the baptismal record from Mexico, and the baptismal record itself, upon the ground that the procedures provided by 18 U.S.C. §§ 3492-3496 for authenticating the document by the testimony of an absent witness are unconstitutional, in depriving the accused of his right to confront all witnesses against him. U.S.Const. amend. VI.

Turning first to defendant's motion to strike the evidence of his 1943 conviction, it is the contention of the Government that the issue as to whether defendant was then an alien was necessarily and fully tried and adjudicated between the parties in 1943, and that the doctrine of res judicata, or more especially the doctrine of collateral estoppel, may properly be invoked against defendant in order to obviate another trial of the nationality-status issue. See 8 U.S.C.A. §§ 1481-1484.

The doctrines of res judicata and collateral estoppel have long been applied in criminal cases in the Federal courts. See: Sealfon v. United States, 1948, 332 U.S. 575, 578, 68 S.Ct. 237, 92 L.Ed. 180; United States v. Adams, 1930, 281 U.S. 202, 204-205, 50 S.Ct. 269, 74 L.Ed. 807; United States v. Oppenheimer, 1916, 242 U.S. 85, 86-88, 37 S.Ct. 68, 61 L.Ed. 161; Frank v. Mangum, 1915, 237 U.S. 309, 333-334, 35 S.Ct. 582, 59 L.Ed. 969; Yawn v. United States, 5 Cir., 1957, 244 F.2d 235, 237-238; Cosgrove v. United States, 9 Cir., 1955, 224 F.2d 146, 150; United States v. Simon, 3 Cir., 1955, 225 F.2d 260, 262; United States v. De Angelo, 3 Cir., 1943, 138 F.2d 466, 468-469; United States v. Carlisi, D.C.E.D. N.Y.1940, 32 F.Supp. 479, 481-483; United States v. Morse, D.C.S.D.N.Y. 1926, 24 F.2d 1001.

To be held conclusive in a subsequent criminal proceeding by virtue of the doctrine of collateral estoppel, the facts determined by the earlier judgment must of course have been fully tried and necessarily adjudicated in order to reach judgment on the issues involved in the essential elements of the crime charged. Sealfon v. United States, supra, 332 U.S. at pages 578-579, 68 S.Ct. at page 239; United States v. Adams, supra, 281 U.S. at page 205, 50 S.Ct. at page 269; but cf. Smith v. United States, 6 Cir., 1957, 243 F.2d 877, 878. Moreover, in applying the

doctrine, "the trial judge should * * * examine the record of the antecedent case to determine the issues decided by the judgment * * *.", and fully instruct the jury as to precisely what facts have thus been established. Emich Motors Corp. v. General Motors Corp., 1951, 340 U.S. 558, 572, 71 S.Ct. 408, 415, 95 L. Ed. 534.

There is some doubt as to whether collateral estoppel is a constitutional requirement of due process [see: Hoag v. State of New Jersey, 1958, 356 U.S. 464, 471, 78 S.Ct. 829, 2 L.Ed.2d 913; Comment, 14 Wash. & Lee L.Rev. 80 (1957) and Comment, 25 Brooklyn L.Rev. 33 (1958)], or merely an expression of public policy. See: Local 167 of International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America v. United States, 1934, 291 U.S. 293, 298–299, 54 S.Ct. 396, 78 L.Ed. 804; Smith v. United States, supra, 243 F.2d at page 878; United States v. Wainer, 7 Cir., 1954, 211 F.2d 669, 671–672; United States v. Gramling, 5 Cir., 1950, 180 F. 2d 498, 499–500; and Anderson, Res Judicata With Respect to Criminal Judgments, 120 N.Y.L.J. 2194 (1939); cf. United States v. Simon, supra, 225 F.2d at page 262; United States v. De Angelo, supra, 138 F.2d at page 469; United States v. Carlisi, supra, 32 F.Supp. at pages 482, 483.

The reported criminal cases in which the doctrine of collateral estoppel has been applied in the Federal courts are largely those in which the doctrine has been invoked for the benefit of the defendant, by way of defense. In Sealfon v. United States, supra, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180, prior acquittal as a conspirator was held in a later prosecution as alleged aidor and abettor to be conclusive on the issue as to the existence of an agreement with a co-defendant. In United States v. Simon, supra, 225 F.2d 260, prior acquittal for receiving stolen goods was held in a later prosecution for possession to be conclusive on the issue as to receipt of the goods by the accused.

In United States v. De Angelo, supra, 138 F.2d 466, it was held that, inasmuch as prior acquittal for robbery was conclusive on the issue as to presence of the accused at the scene of the crime, evidence of his presence was inadmissible in a later trial on the charge of conspiracy. And in both Yawn v. United States, supra, 244 F.2d 235, and United States v. Carlisi, supra, 32 F.Supp. 479, it was held that prior acquittal for possession of a still was conclusive, and hence that evidence of possession by the accused was inadmissible in a later conspiracy prosecution. While in United States v. Meyerson, D.C.S.D.N.Y.1928, 24 F.2d 855, prior acquittal for mail fraud was held conclusive as to the defendant's participation, and thus served as ground to quash a later indictment for conspiracy.

The Court in United States v. McConnell, D.C.E.D.Pa.1926, 10 F.2d 977 held a prior acquittal for fraud to be conclusive as to the issuance of false permits alleged in a later indictment for conspiracy and, an essential element of the offense charged so rendered lacking, the indictment was quashed. See also: United States v. Adams, supra, 281 U.S. at pages 203–204, 50 S.Ct. at page 269; United States v. Oppenheimer, supra, 242 U.S. at pages 87–88, 37 S.Ct. at page 69; Cosgrove v. United States, supra, 224 F.2d at pages 148–149; United States v. Morse, supra, 24 F.2d at page 1001.

Although invoked in criminal cases in the Federal courts primarily by and for the defendant, collateral estoppel has been applied against the interests of the accused in some limited situations. For example, in Steele v. United States, 1925, 267 U.S. 505, 45 S.Ct. 417, 69 L.Ed. 761, the issue of the constitutional validity of a warrant sustained in a prior prosecution was held to be conclusive in a second prosecution, even though objected to on a different ground.

While in Collins v. United States, 8 Cir., 1953, 206 F.2d 918, a finding in a habeas corpus proceeding, following litigation of the issue, that the petitioner had voluntarily and understandingly

624

waived counsel in a prosecution for robbery, was held res judicata in a hearing on a subsequent writ based on the same evidence, Judge Johnsen there observing for the Court that " * * * beyond the matter of technical bar, there exists also the element of the inherent power of a court to protect itself against imposition and abuse of its process, so that no litigant can demand as a matter of right that repetitive judicial consideration and determination be made of a controversy which he once has had the opportunity to subject to juridical proceeding and has obtained a resolution of, on valid process and under existing jurisdiction." 206 F.2d at page 920.

And in United States v. Wainer, supra, 211 F.2d 669, conviction of illegal production and sale of liquor was held conclusive as to defendant's proprietorship, in a later suit by the United States for taxes. Cf.: Chaunt v. United States, 9 Cir., 1959, 270 F.2d 179; Smith v. United States, supra, 243 F.2d 877; Howard v. United States, 8 Cir., 1952, 199 F.2d 276; United States v. Gramling, supra, 180 F.2d 498. Indeed, it is well settled that the facts necessary to determination of a criminal conviction and judgment are to be deemed conclusive in any later civil suit between the same parties or their privies. Emich Motors Corp. v. General Motors Corp., supra, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534; Local 167 of International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America v. United States, supra, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804; United States v. Kaplan, 2 Cir., 1959, 267 F.2d 114, 116; United States v. Bower, D.C.E.D. Tenn.1951, 95 F.Supp. 19.

Of course the situation presented in the case at bar is such that the Government as prosecutor, and not the accused as defendant, invokes the doctrine of collateral estoppel. Although it is the rule in civil cases that collateral estoppel is applied mutually in favor of and against both the plaintiff and the defendant, it is much less clear whether the doctrine is to be applied with the same mutuality in criminal cases. Only two federal cases appear to have discussed this problem directly, both by way of dicta.

In United States v. De Angelo, supra, 138 F.2d at page 468, the Court of Appeals of the Third Circuit stated: "The matter is one of collateral estoppel of the prosecutor. Nor can there be any requirement of mutuality with respect to a criminal judgment's conclusiveness. An accused is constitutionally entitled to a trial de novo of the facts alleged and offered in support of each offense charged against him and to a jury's independent finding with respect thereto." 138 F.2d at page 468.

While in United States v. Carlisi, supra, 32 F.Supp. at pages 481–483, the court explained: " 'In transplanting the doctrine [of res judicata] * * * to criminal law the requirement of mutuality had to be abandoned. A prior adjudication with respect to an element of a subsequently tried offense is not binding upon the accused. This is so because the defendant, charged with crime, always has the right to have the jury or the triers of the facts determine anew every element of guilt.' " 32 F. Supp. at page 482; see also Anderson, Res Judicata With Respect to Criminal Judgments, supra, 120 N.Y.L.J. 2191.

The position taken by way of dicta in these cases—that only the defendant can benefit from application of the doctrine of collateral estoppel in criminal cases— was assumed to be the law in United States v. J. R. Watkins Company, D.C. Minn.1954, 127 F.Supp. 97, 102–103, the court there stating by way of dictum that the defendant could benefit even from a prior conviction, if the fact found in reaching the prior judgment "negative[d] the possibility of guilt in the second prosecution."

Little has been written on the subject of mutuality of collateral estoppel in federal criminal cases, and the authors who have tackled the subject have reached conflicting conclusions from the paucity of authority available to support the choice of either position. [Compare

120 N.Y.L.J. 2194, supra, with Comment, 27 Texas L. Rev. 231, 237–245, 249 (1948); see also: Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 874–880 (1952); Schmidt, Res Adjudicata in Criminal Cases, 26 Calif. State Bar J. 366, 372–374 (1951); Comment, 10 Hastings L.J. 404, 405–406 (1959); Comment, 11 Vand.L.Rev. 221 (1957); cf. Annotation, 147 A.L.R. 991, 996–997 (1943).]

The State courts have applied the doctrine of collateral estoppel against the defendant in some criminal cases. See: Commonwealth v. Ellis, 1893, 160 Mass. 165, 35 N.E. 773; In re Gottesfeld, 1914, 245 Pa. 314, 91 A. 494; People v. Majado, 1937, 22 Cal.App.2d 323, 70 P.2d 1015; Annotation, 147 A.L.R., supra, at 996–997 (1943). In the Majado case last cited, the defendant's prior conviction for failure to support a minor child was held to be conclusive of the issue as to paternity in a later prosecution on the same charge, but for a different act. The California court there stated: "The crime here involved is a continuing one, if the appellant continues to fail to care for the child * * * [the defendant can] put the People to the expense of many trials before this two-year old child reaches its majority, in each of which the fact of parentage must again be established. Eventually, he might secure a jury which would find that he was not the father of the child and, since that judgment could not be set aside, we would then have the same fact judicially determined both ways." 22 Cal.App.2d at pages 326–327, 70 P.2d at page 1017.

This brief review of the reported cases which have come to my attention points up not only the fact that the decisions are in conflict, but also the fact that the majority lean toward acceptance of the view that the doctrine of collateral estoppel, while available to the accused as against the Government, is not available to the prosecutor in Federal criminal cases.

The quoted language of the California court in People v. Majado, supra, suggests the considerations involved.

The doctrine of collateral estoppel, like its parent res judicata, is born of that sound public policy which would put an end to the litigation of a given subject matter, once the parties have had a full and fair hearing and adjudication of the issue. Commissioner v. Sunnen, 1948, 333 U.S. 591, 597–598, 68 S.Ct. 715, 92 L.Ed. 898; Angel v. Bullington, 1947, 330 U.S. 183, 192–193, 67 S.Ct. 657, 91 L.Ed. 832.

The strength of this policy is emphasized by recalling that, in civil litigation, the doctrine is applied even though the issue may not in fact have been litigated, if there was a fair opportunity to litigate it in the prior proceeding—if it might have been litigated, and was necessarily, even though not expressly, adjudicated. Brownell v. Chase National Bank, 1956, 352 U.S. 36, 38–39, 77 S.Ct. 116, 1 L.Ed. 2d 99; Lawlor v. National Screen Service Corp., 1955, 349 U.S. 322, 326–327, 75 S.Ct. 865, 99 L.Ed. 1122; Chicot County Drainage Dist. v. Baxter State Bank, 1947, 308 U.S. 371, 375, 60 S.Ct. 317, 84 L.Ed. 329; Cromwell v. County of Sac, 1876, 94 U.S. 351, 352–355, 24 L.Ed. 195.

The wise public policy underlying the doctrine, and common-sense judicial administration as well, combine to advocate application of collateral estoppel against a defendant in a criminal case, at least as to certain issues, where such issues have been in fact litigated and necessarily adjudicated in a prior criminal case between the identical prosecutor and the identical accused. Issues as to status, for example, would seem most appropriate for application of the doctrine—especially so as to such an unchanging and indeed unchangeable, status as that of natural parent and child, which was involved in People v. Majado, supra, 22 Cal.App.2d 323, 70 P.2d 1015.

To be sure, the issue of nationality status, as to which the Government would invoke collateral estoppel against the defendant in the case at bar, is neither an unchangeable nor an unchanging one. Nationality status can be and frequently is changed from that of alien to that of

American citizen through the judicial process of naturalization. So the 1943 adjudication of defendant's status as an alien could not amount to more than a determination that defendant was an alien as of the date of that adjudication on June 9, 1943.

The first question, then, is whether the Government as prosecutor may invoke the doctrine of collateral estoppel against the accused to establish his nationality status as being that of alien as late as June 9, 1943.

In Sealfon v. United States, supra, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180, the Court admonished that collateral estoppel should not be applied in any criminal proceeding except as to an issue which was actually litigated and necessarily adjudicated, observing that: "The instructions under which the [prior] verdict was rendered * * * must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. We look to them only for such light as they shed on the issues determined by the verdict." 332 U.S. at page 579, 68 S.Ct. at page 240. See also Yates v. United States, 1957, 354 U.S. 298, 335-338, 77 S.Ct. 1064, 1 L.Ed.2d 1356 and cf. Southern Pacific R. Co. v. United States, 1897, 168 U.S. 1, 26, 48-49, 18 S.Ct. 18, 42 L.Ed. 355.

■ Here there can be no doubt that the issue of defendant's alienage was actually litigated between the Government and defendant at the 1943 trial, both sides putting in evidence. It is equally beyond dispute that a finding of fact that defendant was then an alien was made, and that this finding was necessary to a judgment of guilty of the crime of illegal entry into the United States.

Moreover, Perez did not appeal [see Fed.R.Crim.P. 37 and 38, 18 U.S.C.A.], nor move for a new trial within the two-year limit [see Fed.R.Crim.P. 33; cf. Fed.R.Civ.P. 60(b), 28 U.S.C.A.]. Yet he is now seeking to have the issue tried once more on substantially the same evidence as that introduced in the 1943 proceeding. All the evidence defendant has offered, every contention he has advanced, both at the 1943 trial and in the case at bar, is intended to establish his claim that he is a born American citizen. In this situation it is proper to apply collateral estoppel in favor of the Government. The defendant has had the opportunity to prove the very issue he wishes now to retry, to present all of his evidence and to confront all the witnesses against him on the issue.

If the issue of alienage were to be tried each time a defendant makes an entry into the United States, after once having been found by judicial determination to be an alien, there would be less to deter future entries than at the present. Even though the present risk of prosecution for illegal entry would remain under 8 U.S.C.A. § 1326, a defendant would have an added incentive to enter again and again, knowing that a trial de novo on the issue of alienage would be forthcoming and that such trial might, on one occasion, result in a favorable verdict. The Government would be estopped by any unfavorable verdict, and accomplishment of the objectives of the immigration laws to discourage and effectively control the already difficult problem of illegal entries into this country would thus be weakened. The Government should not be put to the expense and burden of proving the issue of alienage after one judicial determination has been made, each time an alien decides to reenter this country illegally.

■ Of course the defendant is entitled to have tried anew each time the facts as to his entry and its justification on other grounds [see 8 U.S.C.A. § 1326], as well as any change of nationality status since the prior adjudication. And it is equally beyond question that the accused is always entitled to have any prior proceedings carefully examined in order to determine surely whether a prior adjudication of alienage was made after a full and adequate hearing, and was essential to a determination of the case. But where, as here, the issue has been fully and fairly litigated and a finding made which was necessary to a final determination of the prior proceeding, the

status of defendant as an alien as of the date of such determination is conclusive in this subsequent case.

The defendant advances the further contention that the 1943 proceeding should not be permitted to work a collateral estoppel on the issue as to his alienage because, the argument goes, the 1943 adjudication was based on a claimed error of law in that the decision then relied upon by this court was later overruled. More particularly, defendant urges that the 1943 finding was based upon one of two possible grounds: either (1) that he was not born in the United States; or (2) that, though born in this country, he elected by his acts to give up his United States citizenship in favor of Mexican citizenship. In support of this argument, defendant contends that in Mandoli v. Acheson, 1952, 344 U.S. 133, 73 S.Ct. 135, 97 L.Ed. 146, the Court held that one who is born in this country cannot elect to give up his citizenship, thus overruling Perkins v. Elg, 1939, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320.

■■□ There is no merit in this contention. Perkins v. Elg held that one who is born in the United States, lives abroad during his minority, and has dual citizenship by virtue of the place of his birth and the citizenship of his parents, may elect to remain a citizen of the United States upon reaching majority. Mandoli v. Acheson qualified this rule by holding that one with dual citizenship will not lose his American citizenship by merely failing to elect. But it is still the law that one born in the United States with dual citizenship may, by his acts, give up his American citizenship, if such acts are voluntarily done after reaching majority. 8 U.S.C.A. § 1481; Mandoli v. Acheson, supra, 344 U.S. 133, 73 S.Ct. 135, 97 L.Ed. 146; Takehara v. Dulles, 9 Cir., 1953, 205 F.2d 560, 562; Longobardi v. Dulles, 1953, 92 U.S.App. D.C. 263, 204 F.2d 407, 408–409; cf. Kawakita v. United States, 1952, 343 U. S. 717, 722–727, 72 S.Ct. 950, 96 L.Ed. 1249; Hichino Uyeno v. Acheson, D.C.

W.D.Wash.1951, 96 F.Supp. 510, 513–514.

There was no error of law in the 1943 determination of defendant's status as that of an alien. Accordingly, defendant's motion to strike the evidence of the adjudication of his status as an alien in the 1943 proceeding is hereby denied.

However, as already observed, the prior adjudication is conclusive of defendant's status as an alien as of June 9, 1943, only. The next question then is whether the defendant's nationality status continued to be that of an alien after the 1943 adjudication. To deal with this question of the continuance of that status in the interim to date, the rule of evidence as to the continuance of a condition or status, once proved to exist, may be invoked.

■ "Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time. * * *. It will be inferred that a given fact or set of facts, the existence of which at a particular time is once established in evidence, continues to exist so long as such facts usually do exist." Noell v. United States, 9 Cir., 1950, 183 F.2d 334, 338, certiorari denied 1951, 340 U.S. 921, 71 S.Ct. 352, 95 L.Ed. 665; see also 31 C.J.S. Evidence § 124 (1942) and 9 Wigmore, Evidence § 2530 (3d ed. 1940).]

The application of this rule of evidence is well illustrated in Mills v. United States, 9 Cir., 1921, 273 F. 625, 627–628. There the defendant had been ordered deported as an alien who had been convicted of an offense involving moral turpitude. Proof of alienage was sought to be supplied by a certificate of naturalization that showed the defendant's husband to be a Canadian citizen. The defendant objected to the admission of the Canadian naturalization certificate into evidence on the ground that there was no proof that it was still in effect. The District Court overruled the objection and received the certificate as evidence of alienage.

The Court of Appeals for the Ninth Circuit affirmed this ruling, stating that the certificate was presumed to continue in effect "until showing was made to the contrary. * * * There was no showing to the contrary * * * and * * * the certificate was sufficient to show prima facie that [the defendant's husband] was at the date thereof a citizen of * * * Canada." 273 F. at page 628.

For other examples of the application of this continuance rule to alienage and citizenship, see United States ex rel. Meyer v. Day, 2 Cir., 1931, 54 F.2d 336, 338; cf. Hauenstein v. Lynham, 1879, 100 U.S. 483, 484, 25 L.Ed. 628; Brewster v. Villa, 5 Cir., 1937, 90 F.2d 853, 854; Brader v. Zurbrick, 6 Cir., 1930, 38 F.2d 472, 473; Vlisidis v. Holland, 3 Cir., 1957, 245 F.2d 812 affirming D.C.E. D.Pa.1957, 150 F.Supp. 678; United States ex rel. Barilla v. Uhl, D.C.S.D.N. Y.1939, 27 F.Supp. 746, affirmed 2 Cir., 1940, 108 F.2d 1021; United States ex rel. Tomasso v. Flynn, D.C.W.D.N.Y. 1927, 22 F.2d 174; see also United States ex rel. Bilokumsky v. Tod, 1923, 263 U.S. 149, 152–154, 44 S.Ct. 54, 68 L.Ed. 221 and 8 U.S.C.A. § 1361.

This presumption of continuance of a condition or status, once proved to exist, has been invoked against the accused in other criminal cases in the Federal courts: e. g., as to residence in Crapo v. United States, 10 Cir., 1939, 100 F.2d 996, 1000; as to household expenses in Noell v. United States, supra, 183 F.2d at pages 337–338; as to employment status in Cataneo v. United States, 4 Cir., 1948, 167 F.2d 820, 823–824; and as to a business connection in United States v. Lesser, 2 Cir., 1933, 66 F.2d 612, 614. [Cf. Wall v. Hudspeth, 10 Cir., 1940, 108 F.2d 865, 866–867 and Jeffra v. United States, 4 Cir., 1948, 169 F.2d 218, 221. All of these examples are situations in which the condition or status, once proved to exist, is presumed, in the absence of evidence to the contrary, to continue even though the condition or status is of such a nature that it may change or be changed by later circumstances or acts.

█ This rule of evidence—this disputable presumption—is one which relieves the prosecutor of proving a negative, namely, that a condition or status, once proved to exist, has not changed. Moreover, in Mills v. United States, supra, 273 F. 625, the court pointed out that the presumption makes a prima facie case on the issue and thus permits the trier of fact to draw an inference of continued alienage, in the absence of evidence to the contrary of the fact presumed. Thus, as a practical matter, the burden of coming forward with evidence to the contrary is placed upon the defendant.

█ Such a rule of evidence is consonant with the due process clause of the Fifth Amendment where, as here, there is a "rational connection between the fact proved and the ultimate fact presumed * * * where the defendant has more convenient access to the proof, and where requiring him to go forward with proof will not subject him to unfairness or hardship." Tot v. United States, 1943, 319 U.S. 463, 467–468, 469–470, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519. However, the considerations just stated admonish that the rule is not to be applied rigidly, but with discretion in each case. The fact finder is permitted "to infer from one fact the existence of another essential to guilt, [only] if reason and experience support the inference." Tot v. United States, supra, 319 U.S. at page 467, 63 S.Ct. at page 1244; see Luria v. United States, 1913, 231 U.S. 9, 25–27, 34 S.Ct. 10, 58 L.Ed. 101. So a court will look to the nature of the condition or status presumed, the probability of change of the condition or status, and the length of time which has elapsed since the claimed condition or status was last proved to exist.

█ The circumstances in evidence in the case at bar are such that it appears improbable in the extreme that mere lapse of time has changed the defendant's status as an alien. There has been no proof offered, no contention advanced, no suggestion made, that the defendant has been naturalized as a United

States citizen since the 1943 adjudication, or that he has other legal justification or excuse for being found in the United States. As trier of fact, then, this court is justified in indulging the disputable presumption that the status of the defendant as an alien, fully and fairly litigated and adjudicated in 1943, has continued to the present, and in the absence of any evidence to the contrary, and in drawing the inference and so finding beyond a reasonable doubt.

Since application of the doctrine of collateral estoppel establishes defendant's status as that of an alien on June 9, 1943, it is unnecessary to reach defendant's motion to strike the evidence relating to the baptismal record, obtained and authenticated from Mexico pursuant to 18 U.S.C. §§ 3492–3496, on the ground that the procedures provided for in the statute are unconstitutional in depriving defendant of his right to confrontation of witnesses [U.S.Const. amend. VI], inasmuch as that evidence relates to nationality status at birth.

For the reasons stated, the finding is that the facts alleged in the indictment at bar are true, and the conclusion follows that the defendant is guilty as charged.