MATTER OF MARINHO

In DEPORTATION Proceedings

A-11499121

*Decided by Board October 22, 1962 and February 11, 1963*

Where conspiracy indictment does not contain an allegation that the alien procured a visa by fraud his conviction under the indictment will not under the doctrine of collateral estoppel establish his deportability under section 212(a)(19) of the Immigration and Nationality Act.

CHARGES:

Order: Act of 1952—Section 241(c) [8 U.S.C. 1251(c)]—Failed or refused to fulfill marital agreement made to procure entry as immigrant.

Lodged: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under 8 U.S.C. 1182(a)(19)—Visa procured by fraud or misrepresentation.

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under 8 U.S.C. 1182(a)(20)—Immigrant visa not valid.

BEFORE THE BOARD

This case is before us on appeal from a decision of a special inquiry officer directing the respondent's deportation.

The respondent is a 30-year-old married male, native and citizen of Portugal, who last entered the United States on June 27, 1958 at which time he was admitted as a nonquota immigrant on the basis of his marriage on April 14, 1958 to Mary McCabe, a United States citizen. He was previously in the United States from September 1956 to May 1958. The Service takes the position that the respondent's marriage was not a bona fide one and that its only purpose was to secure nonquota status for him. On January 19, 1962 he was convicted of conspiracy to violate 8 U.S.C. 1325. The Government abandoned the charge stated in the order to show cause and the second lodged charge and relied solely on the first lodged charge (p. 11). The special inquiry officer concluded that this charge was sustained. The only

214

issue to be determined is whether the respondent is deportable on the charge mentioned.

The examining officer stated (p. 17) that the Government would rely on the doctrine of collateral estoppel, and the special inquiry officer based his decision on that theory, citing *Matter of C—*, 8 I. & N. Dec. 577 (1960), and *Matter of T—*, Int. Dec. No. 1115 (1960). There the courts had made specific findings of fact which precluded relitigation of the same facts in the deportation proceedings. The record before us does not show that the court made findings of fact in the criminal proceeding, and the special inquiry officer has not referred to any specific findings as having been made in that proceeding. Accordingly, the two cases upon which the special inquiry officer relied are not analogous.

The two cases mentioned above were cited by the examining officer as well as the unreported case of *Sifuentes v. Rogers* (S.D. Cal., 1960); *United States v. Rangel-Perez*, 179 F. Supp. 619 (S.D. Cal., 1959); and *Matter of Z—*, 5 I. & N. Dec. 708 (1954). We do not believe that the Sifuentes case has any applicability. In the Rangel-Perez case, the question in the second criminal proceeding was whether the doctrine of collateral estoppel could be invoked against the defendant as to the issue of alienage because of an earlier conviction, and the court specifically said (p. 626) that it was beyond dispute that a finding of fact that the defendant was then an alien had been made in the first criminal proceeding and that this finding had been necessary to a judgment of guilt. We have already indicated that the record in the respondent's case does not show what findings of fact were made in the criminal proceeding. With respect to *Matter of Z—*, *supra*, that case is distinguishable because the alien had been convicted under 18 U.S.C. 1546 which relates *inter alia* to receiving an immigrant visa knowing that it was procured by means of any false claim or statement, whereas the respondent was convicted of conspiracy to violate an entirely different statutory provision.

There is included in Exhibit 3 the court's judgment of January 19, 1962 showing that the respondent was convicted "of the offense of conspiracy (making false statement to Immigration and Naturalization Service)". Count one of the indictment also shows that the respondent was not convicted of violating 8 U.S.C. 1325 but that he and Mary McCabe Marinho were charged with conspiracy under 18 U.S.C. 371 to violate 8 U.S.C. 1325. There are statements in count one that it was part of the plan and purpose of the conspiracy that the two defendants *would* do certain acts but it was not stated that the acts were actually done except insofar as concerns the overt acts which were set out. One of these is that the respondent entered the United States

on June 27, 1958. However, the indictment does not specifically charge that he procured an immigrant visa.

8 U.S.C. 1325, which the defendants conspired to violate, applies to obtaining entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, but it does not relate to procurement of a visa. Exhibit 2 shows that the deportation charge on which the Service relies is based on that part of 8 U.S.C. 1182(a)(19) which refers to an alien who has *procured a visa* by fraud or by willfully misrepresenting a material fact. Under the circumstances, we conclude that the doctrine of collateral estoppel is not applicable to the respondent's case and that his conviction standing alone is insufficient to meet the requirement of 8 U.S.C. 1252(b)(4) that a decision of deportability must be based upon reasonable, substantial and probative evidence.

Under 8 CFR 242.18(a), a formal enumeration of findings is not required but it is provided that the decision of the special inquiry officer shall include findings as to deportability. Such findings were not made in the respondent's case, and it is impossible to determine from this record whether the special inquiry officer found that the respondent procured his visa by both fraud and misrepresentation, by fraud only, or by misrepresentation only. If the latter, there should be set forth the specific statement in the visa application which constituted a misrepresentation. The immigrant visa was not made part of the record.

In his notice of appeal, counsel contended that the marriage between the respondent and Mary McCabe was consummated and that it is an existing legal and valid marriage. In his statement of November 5, 1959 (Ex. 5, pp. 14, 22–23), the respondent stated that he had had sexual relations with his wife. On April 3, 1962 (Ex. 4, p. 5), he stated that he "never lived with her as a wife". At the hearing on June 27, 1962 (p. 26), the respondent answered affirmatively when asked whether he ever had sexual intercourse with this woman after their marriage. No further questions were asked as to when this occurred or whether it occurred on more than one occasion. This may or may not have a bearing on the question of whether the visa was procured by fraud or misrepresentation, but we believe this matter should be developed.

8 CFR 3.1(d)(2) provides that the Board may return a case to the Service for further action without entering a final decision on the merits. In view of what we have said above, we consider it appropriate to reopen the hearing and remand the case to the Service for further development of the record.

ORDER: It is ordered that the outstanding order of deportation be withdrawn; that the hearing be reopened for further action in

accordance with the foregoing; and that the case be remanded to the Service pursuant to 8 CFR 3.1(d)(2).

### BEFORE THE BOARD

On October 22, 1962 we directed that the hearing be reopened and that the case be remanded to the Service. The case is now before us pursuant to a motion of the Service requesting reconsideration.

The respondent is a 30-year-old married male, native and citizen of Portugal, who last entered the United States on June 27, 1958 at which time he was admitted as a nonquota immigrant on the basis of his marriage on April 14, 1958 to Mary McCabe, a United States citizen. He was previously in the United States from September 1956 to May 1958. The special inquiry officer held that the first lodged charge was sustained on the basis of the respondent's conviction on January 19, 1962 and under the doctrine of collateral estoppel by judgment.

The Service asserted (motion, p. 2) that the respondent was convicted of a violation of 8 U.S.C. 1325. However, it is apparent from the court's judgment of January 19, 1962 (part of Ex. 3) that he was actually convicted of *conspiracy* under count one of the indictment. Count one shows that the respondent and Mary McCabe Marinho were charged with conspiracy under 18 U.S.C. 371 to violate 8 U.S.C. 1325. In *Pinkerton* v. *United States*, 328 U.S. 640, 643 (1946), it was said: "It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." Under the circumstances, we do not believe it can be said that the respondent was convicted of violating 8 U.S.C. 1325. In addition, although fraudulent procurement of a visa appears to be within the purview of 18 U.S.C. 1546, it is clear that 8 U.S.C. 1325 does not relate to procurement of a visa.

At the hearing (pp. 11–12), the examining officer stated that the Government wished to abandon charges #1 (stated in the order to show cause) and #3, and would rely solely on charge #2 (the first lodged charge). The special inquiry officer sustained the latter charge and did not discuss the other two charges in his decision. In our previous order, we mentioned this but we observe that the Service now asserts (motion, pp. 6 and 7) that all the charges are sustained. With the exception of this general statement, however, the motion contains no specific argument that charges #1 and #3 have been established. Since these two charges were not even considered by the special inquiry officer, we deem it appropriate to limit our discussion to the first lodged charge. If the Service desires to reinstate the two charges which it abandoned, such a request may be made to the special inquiry officer during the reopened hearing.

217

In our previous decision, we stated that the special inquiry officer failed to make findings as to deportability; that it was impossible to determine from this record whether the special inquiry officer found that the respondent procured his visa by both fraud and misrepresentation, by fraud only, or by misrepresentation only; and that, if it was the latter, there should be set forth the specific statement in the visa application which constituted a misrepresentation. We indicated that the visa, showing the misrepresentation, should have been included in the record. The Service stated that it did not object to a remand of the case to the special inquiry officer for appropriate findings of fact and conclusions of law but suggested that the Board hold that the charges are sustained and make its own findings. While this Board has authority to make findings of fact and conclusions of law, we do not consider that it would be proper to do so in this case since 8 CFR 242.18(a) contemplates that this shall be done by the special inquiry officer in the first instance, and *Bridges* v. *Wixon*, 326 U.S. 135, 153 (1945), indicates the necessity for officers of the Service to comply with its regulations.

After stating in its motion that it did not object to a remand of the case for the limited purpose stated above, the Service said that it was opposed to any full scale reopening of the hearing for exploration of issues which it asserts are foreclosed by the pleadings and under the doctrine of collateral estoppel. The Service does not claim that the pleadings alone would be sufficient, and that appears to have been the view also of the special inquiry officer who relied on the doctrine of collateral estoppel. We shall indicate later herein why the doctrine of collateral estoppel cannot be utilized in this case and why there is a doubt as to whether the respondent admitted the ninth factual allegation. Accordingly, we shall permit the Service and the respondent to present any pertinent evidence at the reopened hearing. We believe there should be a clarification at that time concerning exactly what the respondent admits and denies and with respect to his conflicting testimony on November 5, 1959, April 3, 1962 and June 27, 1962 as to whether he did or did not have sexual intercourse with his wife. The Service asserts that the alien's statements (Ex. 4) sustain the charges. The special inquiry officer did not discuss nor even mention Exhibit 4 in his decision but this can be done when he reconsiders the case.

The factual allegations particularly important in the respondent's case are allegations seven and nine which are part of the two charges lodged on May 22, 1962. At that time, the special inquiry officer stated (p. 7) that, since the respondent denied deportability on these charges and the factual allegations, he would not be asked to plead to the truth or falsity of the allegations. At the reopened hearing, counsel stated that he denied deportability on the first lodged charge

and was then asked to examine factual allegations seven through twelve and state which he was prepared to admit or deny. He stated (p. 13) that allegations seven and twelve were denied and the other allegations were admitted. There is some inconsistency in the denial of allegation seven concerning the asserted agreement for a fraudulent marriage, and the admission of allegation nine relating to the application for an immigrant visa which also contains an allegation that the marriage was fraudulent.

After counsel had indicated which factual allegations were admitted and denied, the special inquiry officer thereafter explained factual allegations seven to twelve to the respondent, and we observe that the respondent had difficulty understanding the explanation of the ninth factual allegation but finally said (p. 15) : "I understand that, but—" at which point the special inquiry officer interrupted and said that he had not asked the respondent to deny it.

Subsection (d) of 8 CFR 242.16 relates to the lodging of additional charges and provides that the special inquiry officer shall read the additional factual allegations and charges to the respondent and explain them to him in nontechnical language. Thereafter, the provisions of subsection (b) of that regulation apply, and this provides that the respondent shall plead to the charges by stating whether he admits or denies the factual allegations and his deportability. As we have indicated above, the charges were not explained to the respondent until after his counsel had been requested to state what factual allegations were admitted or denied. Allegation nine, containing 12 typewritten lines, is long and involved and some of the assertions are not controverted by the respondent. Inasmuch as the regulations were not strictly complied with and in view of the thwarting of the respondent's attempt to explain his position concerning factual allegation nine, we are not satisfied that there was a valid admission of the truth of all assertions contained in this factual allegation.

In our previous decision, we pointed out certain deficiencies in the record and we concluded that, pursuant to 8 CFR 3.1(d)(2), the case should be returned to the Service for further action without the entry of a final decision by this Board on the merits. Under the circumstances, we shall not at this time determine whether the first lodged charge might be sustained on some basis other than that of collateral estoppel, as for example, the pleadings, admissions of the respondent in this proceeding or in the criminal proceeding, or inferences to be drawn from the respondent's conviction. We shall, however, dispose of the contention of the Service relating to collateral estoppel.

In connection with this contention, the only cases cited by the Service were: *Yates* v. *United States*, 354 U.S. 298 (1957); *Lutwak* v. *United States*, 344 U.S. 604 (1953); *United States* v. *Accardo*, 113 F.

Supp. 783 (D.N.J., 1953), aff'd 208 F. 2d 632, cert. den. 347 U.S. 952; *Matter of S—,* Int. Dec. No. 1221 (1962); and *Matter of C—,* 8 I. & N. Dec. 577 (1960). Yates, as we shall later indicate, is actually adverse to the postion of the Service.

Lutwak did not involve collateral estoppel. The quotation from that decision (motion, p. 7) related to the contention of those petitioners that their marriages were valid. The court declined to pass on the validity of the marriages, stating that this was not material. On page 5 of the motion, the Service quoted from a sentence in the Lutwak decision which reads, in part, as follows: "There is an abundance of evidence in this record of a conspiracy to contract spurious, phony marriages * * *." We shall not at this time consider the validity of the respondent's marriage, but the fact that there was an abundance of evidence that the Lutwak marriages were spurious is of no assistance in determining whether there is such evidence in the respondent's case.

The language which the Service quoted from the Accardo decision simply means that, after Accardo had been convicted of conspiring to operate an unregistered still, he could not deny his guilt of the conspiracy in the subsequent denaturalization suit. This respondent makes no claim that he was innocent of the offense for which he was convicted, and the Accardo decision is of no value in sustaining the argument of the Service.

*Matter of S—* did not involve collateral estoppel. There, we held that the alien was excludable because he had been convicted of a crime involving moral turpitude—conspiracy to commit, among other offenses, the crimes of forgery and uttering a forged instrument. He contended that he had actually pleaded guilty only to that portion of the conspiracy count relating to gambling. His exclusion was directly predicated on the conviction, whereas this respondent is not charged with being deportable by reason of the conviction itself. S— was attempting to controvert the conviction record; this respondent has made no effort to attack the conviction nor does he claim that he intended to plead guilty to only part of the conspiracy count. For the reasons mentioned, *Matter of S—* is not analogous to the respondent's case.

The remaining case cited by the Service is *Matter of C—, supra.* There, we held that the court's finding in a denaturalization suit that the naturalized person had been a member of the Communist Party was conclusive, under the doctrine of collateral estoppel, in a subsequent deportation proceeding against that person based on his Communist Party membership. In the similar case of *Matter of T—,* Int. Dec. No. 1115 (1960), we reached the same conclusion. In those two cases, the records in the denaturalization suits established that the

courts had made the findings concerning Communist Party membership. As we pointed out in our previous order, the record relating to the respondent's conviction does not show what specific findings of fact may have been made in that proceeding, and the special inquiry officer's decision does not clarify that matter. We do not mean that there must have been formal findings of fact in the first action providing that it can be determined definitely what facts or issues were actually decided by the court.

Our decisions in *Matter of C—* and *Matter of T—*, *supra*, were predicated on the principles stated in *Cromwell* v. *County of Sac*, 94 U.S. 351 (1876) and *Southern Pacific Railroad Co.* v. *United States*, 168 U.S. 1 (1897). In the former, at page 353, it was said: "* * * where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." Under the doctrine of collateral estoppel, the point or question to be determined in the second action must be the same as that litigated in the original action and it must have been a fact which was essential to the first decision. *Tait* v. *Western Maryland Railway Co.*, 289 U.S. 620, 623 (1933). If there is any uncertainty as to the precise question determined in the first suit and the uncertainty is not removed by extrinsic evidence, no estoppel is created. *De Sollar* v. *Hanscome*, 158 U.S. 216, 221 (1895); *Russell* v. *Place*, 94 U.S. 606, 608, 610 (1877).

There appears to be no dispute between the parties concerning the fact that the respondent last entered the United States on June 27, 1958 and that he was then admitted as a nonquota immigrant on presentation of an immigrant visa which had been issued on the basis of his marriage to Mary McCabe. As a matter of fact, the third and fourth factual allegations are to that effect and these were admitted by the respondent. However, the crucial question is whether he procured his immigrant visa *by fraud or misrepresentation*.

Although there are allegations in count one of the indictment that it was part of the plan and purpose of the conspiracy that the respondent, Mary McCabe Marinho and two other persons *would* do certain acts, including allegations that the respondent would execute an application for immigrant visa and that the State Department would issue a nonquota visa to the respondent, the indictment does not specifically state whether these acts were or were not performed except insofar as concerns the five overt acts which were set out. None of the overt acts relates to the respondent's procurement of his immigrant visa, and there is no specific allegation in the indictment that the respondent procured his immigrant visa by fraud or misrepresentation or even that he procured a visa. Hence, if we accepted every allega-

221

tion of the indictment as having been proved, that would still not establish that an issue actually litigated and determined in the criminal case was whether the respondent procured his immigrant visa by fraud or misrepresentation, nor that this issue was essential to the judgment in that proceeding. In view of the foregoing, those elements which are prerequisites to the application of the doctrine of collateral estoppel do not exist in the respondent's case.

The ultimate fact which must be determined in this deportation proceeding is whether the respondent procured his immigrant visa by fraud or misrepresentation In *Yates* v. *United States, supra,* which was cited by the Service, the following statement was made at page 338: "The normal rule is that a prior judgment need be given no conclusive effect at all unless it establishes one of the ultimate facts in issue in the subsequent proceeding. So far as merely evidentiary or 'mediate' facts are concerned, the doctrine of collateral estoppel is inoperative." We believe this statement of the Supreme Court makes it abundantly clear that the doctrine of collateral estoppel is inapplicable in this respondent's deportation case. For the reasons indicated above, the motion of the Service will be denied.

ORDER: It is ordered that the motion of the Service for reconsideration, except as reconsidered herein, be and the same is hereby denied.