**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Timothy Wayne ARNETT,
Defendant–Appellant.**

**United States of America,
Plaintiff–Appellee,**

v.

**Timothy Wayne Arnett, Defendant–Appellant.**

**Nos. 00–10170, 00–30189.**

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 10, 2003.*

Filed April 24, 2003.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Timothy Wayne Arnett, Lompoc, CA, pro se.

Frank R. Papagni, Jr., Assistant United States Attorney, Eugene, OR; Dawrence W. Rice, Jr., Assistant United States Attorney, Fresno, CA, for the plaintiff-appellee.

Before TROTT, RYMER, and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge.

Timothy Wayne Arnett appeals *pro se* his convictions for armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and for use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).[1] Arnett's convictions stem from seven armed bank robberies in California and one in Oregon.[2] Arnett raises a number of issues on appeal. In this published opinion we address whether the California district court erred in holding that Arnett was collaterally estopped from relitigating an issue he litigated and lost in his Oregon trial—that the short-barreled shotgun he

used in both the California and Oregon robberies was an "antique" under 18 U.S.C. § 921(a)(3) and (a)(16)(A). We affirm because the California district court correctly applied the doctrine of collateral estoppel. We address Arnett's other arguments in a companion unpublished disposition.

I

■ Arnett was arrested after robbing a bank in Medford, Oregon. He then confessed to several additional robberies in California. Arnett was eventually indicted in both the District of Oregon on the Medford robbery and in the Eastern District of California for seven counts of armed bank robbery and seven counts of using a firearm during a crime of violence in violation of § 924(c)(1).[3] However, section 924(c)(1) does not apply to an antique firearm— specifically, a firearm made before 1898. 18 U.S.C. § 921(a)(3) and (a)(16)(A).

Arnett was first tried and convicted in federal court in Oregon. In his Oregon trial, Arnett offered the expert testimony of J.B. Wood. Wood testified that the firearm Arnett used in the Oregon bank robbery was an antique. Nonetheless, the Oregon jury found Arnett guilty of the offense of using or carrying a firearm, specifically a "short-barreled shotgun,"

---

1. At the time of Arnett's trial, 18 U.S.C. § 924(c)(1) provided:

   Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years
   . . . .

   18 U.S.C. § 924(c)(1) (1995 ed.).

2. Arnett filed two appeals, one from his Oregon conviction and one from his California conviction. By order of this court, Arnett's appeals were consolidated.

3. 18 U.S.C. § 924(c)(1) is not a sentence enhancement, but rather is a separate substantive crime. *Castillo v. United States,* 530 U.S. 120, 124, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000). *Castillo* examined § 924(c)(1) before it was amended in November of 1998. Other courts of appeals have concluded that under the amended version of the statute, the classification of the weapon used is a sentencing factor, not an element of the offense. *See United States v. Sandoval,* 241 F.3d 549, 551–52 (7th Cir.), *cert. denied,* 534 U.S. 1057, 122 S.Ct. 649, 151 L.Ed.2d 566 (2001). The crime at issue here, however, occurred before the amendment.

during a crime of violence. On appeal, we affirmed Arnett's conviction, holding that the evidence presented in the Oregon trial was sufficient to support the jury's finding that Arnett's weapon was not an antique. *United States v. Arnett*, No. 97–30066, 1998 WL 42235, at *2 (9th Cir. Jan. 30, 1998) (unpublished memorandum disposition).

In his subsequent California prosecution, Arnett filed a motion in limine seeking to again introduce Wood's testimony opining that the firearm Arnett used during the commission of the robberies was an antique. The district court in California ruled that Arnett was collaterally estopped from raising the identical antiquity defense because the issue had been fully litigated and resolved adversely to him by the jury's verdict in the Oregon case. On appeal, Arnett argues that the district court erred in applying the doctrine of collateral estoppel because that doctrine cannot be used offensively by the government against a defendant in a criminal case.

## II

### A

■ We review the application of the collateral estoppel doctrine de novo. *United States v. Real Prop. Located at 22 Santa Barbara Dr.*, 264 F.3d 860, 868 (9th Cir.2001).

■ The collateral estoppel doctrine cautions litigants that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). We employ a three-step approach in making the collateral estoppel determination: (1) we identify the issues in the two actions for the

purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) we examine the record of the prior case to decide whether the issue was "litigated" in the first case; and (3) we examine the record in the prior proceeding to ascertain whether the issue was necessarily decided in the first case. *United States v. Romeo*, 114 F.3d 141, 143 (9th Cir.1997). Collateral estoppel is not applied in criminal cases "with the hypertechnical and archaic approach of a 19th century pleading book," but rather with "realism and rationality." *Ashe*, 397 U.S. at 444, 90 S.Ct. 1189.

All three elements permitting the application of collateral estoppel are present in Arnett's case. First, the issue presented in the Oregon prosecution was identical to the one Arnett attempted to present in the California prosecution: whether his weapon of choice was an "antique" and therefore an exception to the statutory prohibition under 18 U.S.C. § 921(a)(3) and (a)(16)(A). Because Arnett admitted to using the same short-barreled shotgun during the commission of each bank robbery, the age of Arnett's gun was material to the resolution of the same issue in both cases. Second, during the Oregon prosecution, Arnett advanced and litigated the identical argument—that his weapon was an antique—and even offered the same expert witness—Wood—whom he sought to use again in the California trial. Finally, because Arnett was found guilty of using the same firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1) in the Oregon case, the antiquity issue was necessarily decided against him in his first trial.

### B

The remaining question is whether the use of collateral estoppel against Arnett, a

defendant in a criminal trial, is permissible in light of the constitutional due process protections afforded criminal defendants. In this circuit, we have previously consid-. ered this issue in the context of illegal reentry prosecutions and determined that collateral estoppel can be used offensively against a criminal defendant. *United States v. Bejar–Matrecios*, 618 F.2d 81, 83 (9th Cir.1980); *Pena–Cabanillas v. United States*, 394 F.2d 785, 787–88 (9th Cir.1968) (adopting the reasoning of *United States v. Rangel–Perez*, 179 F.Supp. 619 (S.D.Cal. 1959)).

In *Pena–Cabanillas* we framed the issue as being "whether the [collateral estoppel] doctrine is to be applied with the same mutuality in criminal cases as it is in civil cases, to-wit, in favor of and against both the plaintiff and defendant." 394 F.2d at 787. In affirming the use of collateral estoppel offensively against a criminal defendant, we relied on the district court's "well written opinion" in *Rangel–Perez*. The *Rangel–Perez* court applied collateral estoppel against a criminal defendant in an illegal reentry case, reasoning that collateral estoppel had "long been applied in criminal cases in the Federal courts." *Rangel–Perez*, 179 F.Supp. at 622. The holding in *Rangel–Perez* acknowledged that the majority of cases where collateral estoppel had been applied in the federal courts are "largely those in which the doctrine has been invoked for the benefit of the defendant, by way of defense." *Id.* at 623. Nonetheless, that court determined that:

> wise public policy underlying the doctrine, and common-sense judicial administration ... combine to advocate appli-' cation of collateral estoppel against a defendant in a criminal case, at least as to certain issues, where such issues have been in fact litigated and necessarily adjudicated in a prior criminal case be-

tween the identical prosecutor and the identical accused.

*Id.* at 625.

We again considered the application of collateral estoppel against a criminal defendant in *Bejar–Matrecios*. In *Bejar–Matrecios*, the defendant-appellant was charged with illegal reentry and at trial objected to the introduction, of a certified copy of a judgment and commitment order showing that he had previously pled guilty to misdemeanor illegal entry. 618 F.2d at 82–83. Relying on our holdings in *Pena–Cabanillas* and *United States v. Colacurcio*, 514 F.2d 1 (9th Cir.1975), we held that collateral estoppel could be applied against a defendant in a later criminal proceeding to preclude him from relitigating facts that were necessarily decided against him during a prior criminal proceeding. *Id.* at 83. Although we acknowledged the application of collateral estoppel was proper in *Bejar–Matrecios*, we ultimately excluded the evidence as being unduly prejudicial under Federal Rule of Evidence 403. *Id.* at 84.

In *Colacurcio*, we considered whether collateral estoppel could be applied against a criminal defendant outside of the illegal-reentry context. 514 F.2d at 5–6. In that case, the defendant was first convicted of conspiring to use facilities of interstate commerce to promote illegal gambling. *Id.* at 3. Facts presented during that trial established that the defendant received income in the form of "protection payments." *Id.* In the defendant's subsequent trial for tax invasion, the government relied on the doctrine of collateral estoppel to establish the amount of money received by the defendant during the years in question, and the jury was instructed to consider the fact as proven. *Id.*

There we rejected the defendant-appellant's argument that the application of collateral estoppel against a criminal defendant ignores the defendant's constitutional

right to be confronted with the witnesses against him and his right to have all of the facts decided by the jury. *Id.* at 6. Instead, we reasoned that "[w]hile Rangel–Perez and Pena–Cabanillas are limited to the question of the defendant's status, ... the rationale of those cases is equally applicable to those facts actually decided which were essential to the judgment in the prior case." *Id.* We ultimately resolved the collateral estoppel issue presented in *Colacurcio* by holding that the facts upon which the government relied were not essential to the prior judgment and therefore not subject to collateral estoppel. *Id.* While the collateral estoppel issue presented in *Colacurcio* was not critical to our resolution of that case, *Colacurcio* has subsequently been cited for the proposition that, in this circuit, collateral estoppel can be used against a criminal defendant. *See United States v. Pelullo,* 14 F.3d 881, 891 (3rd Cir.1994); *Bejar–Matrecios,* 618 F.2d at 83.

We are aware that other circuits have reached the opposite result. In *Pelullo,* the Third Circuit held that a defendant's prior conviction following a jury trial for wire fraud could not give rise to collateral estoppel to prevent relitigation of the same crime as a predicate offense in his later RICO trial. 14 F.3d at 896. The Third Circuit was highly critical of what it viewed as the Ninth Circuit's willingness to subordinate a defendant's constitutionally guaranteed right to a jury trial to concerns for judicial efficiency. *Id.* at 891. The *Pelullo* court concluded that a defendant's "right to a jury trial necessitates that every jury empaneled for a prosecution consider[ ] evidence of guilt afresh and without the judicial direction attending collateral estoppel." *Id.* at 896.

Other circuits have decided that the efficiency considerations served by the doctrine of collateral estoppel do not justify its use against a criminal defendant. In *United States v. Harnage,* 976 F.2d 633, 633 (11th Cir.1992), the Eleventh Circuit rejected the government's invitation to sanction the use of the doctrine of collateral estoppel to preclude a criminal defendant from raising an issue adjudicated in a prior proceeding. *Harnage* did not address the constitutional issue, but instead reasoned that allowing the government to bar a defendant from relitigating an unfavorable determination of fact in a prior proceeding would not serve collateral estoppel's goal of judicial economy. *Id.* at 635 ("We are not convinced that allowing the government to bar a defendant from relitigating an unfavorable determination of facts in a prior proceeding would serve the original goal of collateral estoppel—judicial economy.").

Likewise in *United States v. Gallardo–Mendez,* 150 F.3d 1240 (10th Cir.1998), the Tenth Circuit rejected the application of collateral estoppel against criminal defendants, finding that "while 'wise public policy and judicial efficiency' may be sufficient reasons to apply collateral estoppel in civil cases, they do not have the same weight and value in criminal cases." *Id.* at 1244 (citing *Ashe,* 397 U.S. at 464, 90 S.Ct. 1189).

## C

■ We follow our court's precedent and hold that the district court did not err in applying collateral estoppel to bar Arnett from relitigating the Oregon jury's determination that the shotgun he used in all of his robberies was not an antique. On the facts of this case, we see nothing unfair in applying the doctrine to bar Arnett's defense. This is a classic example of the proper application of collateral estoppel.

The application of collateral estoppel in Arnett's case does not implicate the primary concern raised by the Third Circuit

in *Pelullo*. The *Pelullo* court held that the application of collateral estoppel against the defendant in a criminal case interferes with the power of a jury to determine every *element* of the crime. 14 F.3d at 896 (emphasis added). The California court's application of collateral estoppel did not eliminate the government's burden to prove every element of the firearm offense because Arnett's argument that his shotgun is an antique is an affirmative defense. *United States v. Smith,* 981 F.2d 887, 891–92 (6th Cir.1992), *cited with approval in United States v. Freter,* 31 F.3d 783, 789 n. 6 (9th Cir.1994).

Most importantly, the use of collateral estoppel to bar Arnett's affirmative defense is consistent with our own line of cases. We have recognized that common-sense judicial administration supports the application of collateral estoppel in criminal cases. In the Oregon trial, Arnett was accorded his constitutional right to trial by jury, including the right to cross-examine all witnesses against him regarding the facts essential to his conviction. The Oregon jury heard Arnett's evidence, including Wood's expert testimony, and the jury determined that his defense had no merit. The application of collateral estoppel is proper in the California case as to those facts pertaining to the identical defense rejected by the Oregon jury. *See Colacurcio,* 514 F.2d at 6. Allowing Arnett to relitigate his antiquity defense after a full and fair opportunity to do so in Oregon would result in a needless waste of scarce judicial resources and would threaten the integrity of the judicial process by increasing the chance of an inconsistent verdict. No constitutional provision requires such a result.

**AFFIRMED.**