**REYN'S PASTA BELLA, LLC, Jeffrey Ledon Deweese, M.D., Barry Leonad, dba Critter Fritters, Hat–In–The–Ring, Inc. dba Eddie Rickenbacker's, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**VISA U.S.A., INC., Mastercard International, Inc., Bank of America, N.A., a subsidiary of Bank of America Corporation, Wells Fargo Bank, N.A. a subsidiary of Wells Fargo & Company, U.S. Bank, N.A., a subsidiary of U.S. Bancorp, Defendants.**

No. C 02–3003 JSW.

United States District Court,
N.D. California.

April 21, 2003.

42 U.S.C. § 1997e and 28 U.S.C. § 1915."

*Page v. Torrey*, 201 F.3d at 1140.

Richard Joseph Archer, Archer & Hansen, Occidental, CA, James Archer Kopcke, Golden Kopcke LLP, San Francisco, for Hat–In–The–Ring Inc., Reyn's Pasta Bella, LLC, Barry Leonard, and Jeffrey Ledon Deweese.

R. Stewart Baird, Office of the General Counsel, Wells Fargo Bank, National Association, San Francisco, CA, Joshua R. Floum, Adria Yvonne LaRose, Robert L. Stoleberger, Holme, Roberts & Owen, LLP, San Francisco, CA, for Wells Fargo Bank N.A.

Stephen V. Bomse, Brian P. Brosnahan, M. Laurence Popofsky, Jonathan Dowell, Laurence Andrew Weiss, Heller, Ehrman, White & McAuliffe, LLP, San Francisco, CA, for Visa U.S.A. Inc.

Lisa Cantos, Jay Neil Fastow, Debra J. Pearlstein, Weil, Gotshal & Manges, LLP, New York City, Jeffrey Hoffman Drichta, Keila D. Ravelo, Clifford Chance U.S., LLP, New York City, Kenneth A. Gallo, Clifford Chance U.S., LLP, Washington, DC, Noah J. Hanft, Joshua L. Peirez, Eileen S. Simon, Mastercard International Incorporated, Purchase, NY, for Mastercard International Inc.

Sonya D. Winner, Darren D. Cooke, Covington & Brling, San Francisco, CA, for Bank of America N.A. (USA).

Andrea Goranson, Eileen R. Ridley, Foley & Lardner, San Francisco, CA, Michael F. Lueder, Maurice J. McSweeney, Foley & Lardner, Milwaukee, WI, for U.S. Bank.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND STRIKING ALLEGATIONS FROM THE FIRST AMENDED COMPLAINT

WHITE, District Judge.

### INTRODUCTION

Plaintiffs are various merchant, retail and service businesses who bring this action against Defendants, credit card companies Mastercard International, Inc. ("Mastercard") and Visa U.S.A., Inc. ("Visa") and credit card issuing banks. Plaintiffs challenge the internal fee system of Mastercard and Visa as price fixing in violation of section 1 of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. § 1, *et seq.* Plaintiffs also claim the structure of Mastercard and Visa as a joint venture of member banks violates various provisions of the Clayton Act, 15 U.S.C. § 12 *et seq.*, prohibiting ownership of businesses by banks. 12 U.S.C. §§ 24, 24a; 15 U.S.C. § 18. Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss each of plaintiffs' claims. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. The Court further orders that certain allegations be stricken from the Plaintiffs' First Amended Complaint.

### STATEMENT OF FACTS

Visa and Mastercard are each joint ventures by banks, including Defendant banks. Through their member banks, Visa and Mastercard issue various forms of payment cards. *In re Visa/MasterMoney Antitrust Litigation,* 280 F.3d 124, 130 (2d Cir.2001). Member banks can issue Visa or Mastercard payment cards to consumers and set interest rates, fees, and other terms for cardholders. *Id.* Member banks also individually contract with retailers on behalf of Visa or Mastercard to purchase payment card transactions. *Id.* Member banks may function as either "issuing" banks or "acquiring" banks, or both. There has also been no allegation that a bank which is a member of the Visa network cannot also be a member of Mastercard, or a member of another payment card venture that has different interchange rules entirely.

When a customer pays with a payment card, the "acquiring" bank purchases the payment card receipt (or electronic equivalent) from the retailer for the amount of payment less a "merchant discount" fee. Through the Visa or Mastercard system, the acquiring bank then receives reimbursement from the cardholder's "issuing" bank for the purchase price less an "interchange fee"—a preset fee agreed to by all issuing and acquiring banks on the Visa or Mastercard network. The issuing bank then profits by the amount of the interchange fee, while the acquiring bank profits by the amount of the merchant discount less the interchange fee.[1] In a credit card system, the

---

1. Defendants offer the following sample transaction: A consumer purchases $100 worth of goods from a merchant by charging his payment card. The merchant then receives $98.40 from the acquiring bank, representing the face value of the transaction ($100) minus a 1.6% merchant discount ($1.60). The acquiring bank receives $98.75 from the issuing bank, representing the purchase price minus a 1.25% interchange fee. For its payment, the issuing bank receives the right to charge the cardholder the full $100 payment price in addition to any interest that might accrue on the transaction. The acquiring bank makes a not profit equal to the difference between the merchant discount and the interchange fee, or $0.35 from this transaction.

issuing bank rather than the merchant bears the risk of nonpayment by the cardholder. *National Bancard Corporation (NaBanco) v. VISA U.S.A., Inc.,* 779 F.2d 592, 595 (11th Cir.1986).

While Defendants set different interchange fees for different classes of retail business, the interchange fees do not vary between member banks. Member banks do not individually negotiate varying interchange fee rates between themselves. All member banks have agreed to uniform interchange fees throughout the payment system.

Plaintiffs claim that this agreement on uniform interchange fees amounts to horizontal price fixing in violation of the Sherman Act. Plaintiffs allege that the merchant discounts that acquiring banks assess merchants for each transaction are "based largely on" the interchange fees. (First Amended Complaint, hereinafter "FAC" at ¶ 20(b)). By agreeing to fix the interchange fee, Plaintiffs maintain, Defendants have limited competition in the merchant discount market because no acquiring bank can charge a merchant discount below the interchange fee. Plaintiffs further allege that Visa, Mastercard, and Defendant banks have "boycotted banks and third parties that have competed by lowering the deposit fee." (FAC at ¶ 25.) Plaintiffs also attack the ownership of Visa and Mastercard by their member banks, an arrangement which they allege enables Defendants' price fixing practices, as violating both the Clayton Act, 15 U.S.C. § 12 *et seq.,* and the Bank Service Company Act, 12 U.S.C. § 1861 *et seq.* Plaintiffs seek treble damages from losses due to the allegedly artificially high merchant discount.

## ANALYSIS

### A. Legal Standard.

A motion to dismiss for failure to state a claim will be denied unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.* 80 F.3d 336, 337–38 (9th Cir.1996). Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). The court is not, however, bound to accept as true conclusory allegations of law or legal conclusions couched as a factual allegations. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Arpin v. Santa Clara Transp. Agency,* 261 F.3d 912, 923 (9th Cir.2001) (internal quotation omitted).

In deciding such a motion, the court may also consider facts that are properly the subject of judicial notice. *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986); *see also Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir.1988) (holding that a district court may take notice of the "proceedings and determinations" of prior related litigation without treating the Rule 12(b)(6) motion as one for summary judgment).

Defendants move to dismiss each of Plaintiffs' claims. The Court addresses each claim in turn.

### B. Plaintiffs Have Stated a Claim for Relief under the Sherman Act.

■ Section 1 of the Sherman Act makes unlawful "[e]very contract, combination ..., or conspiracy, in restraint of trade or commerce among the States." 15 U.S.C. § 1. To state a claim under section 1 of the Sherman Act, Plaintiffs must allege (1) that Defendants entered into a contract, combination, or conspiracy; (2)

that this agreement unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis; and (3) that the restraint affected interstate commerce. *Tanaka v. University of Southern California,* 252 F.3d 1059, 1062 (9th Cir.2001) (internal quotations omitted); *Bhan v. NME Hospitals, Inc.,* 929 F.2d 1404, 1410 (9th Cir.), *cert. den.,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991).

In examining the reasonableness of a restraint on trade, most claims of antitrust violation are analyzed under a "rule of reason." *State Oil Co. v. Khan,* 522 U.S. 3, 10, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997). A restraint violates the rule of reason if the harm to competition outweighs its procompetitive effects. *Tanaka,* 252 F.3d at 1062; *California Dental Ass'n v. Federal Trade Comm'n,* 224 F.3d 942, 947 (9th Cir.2000), *citing Amer. Ad Mgt. v. GTE Corp.,* 92 F.3d 781, 789 (9th Cir.1996). To state a claim, Plaintiff must allege an "actual[ ] . . . injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged." *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 811 (9th Cir. 1988).

For certain types of restraints that have a "predictable and pernicious anticompetitive effect" without potential for procompetitive benefit, courts do not employ the rule of reason analysis, but rather deem the restraints unlawful *per se. State Oil,* 522 U.S. at 10, 118 S.Ct. 275. Once this type of restraint is demonstrated, no further showing of actual harm to competition is required. *Bhan,* 929 F.2d at 1410. Among those restraints considered *per se* unlawful are horizontal price fixing arrangements—agreements formed between competitors providing similar products "for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodi-

ty in interstate or foreign commerce." *United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 223, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

### 1. Plaintiffs Successfully Allege that the Uniform Interchange Fees Violate the Sherman Act.

Plaintiffs maintain that the agreement between banks within each payment card network to impose a uniform interchange fee on each transaction constitutes a horizontal restraint on trade in violation of section 1 of the Sherman Act. Plaintiffs have satisfied the first and third elements of a section 1 claim by alleging an agreement between the member banks of Visa and Mastercard to perform the payment services at a set interchange fee, (FAC at ¶¶ 10, 20) and by alleging interstate transactions by member banks (FAC at ¶¶ 6–10). Plaintiffs' claim turns on whether they can meet the second requirement for a Section 1 Sherman Act violation: whether the interchange fees as alleged could be found an unreasonable restraint on trade under the Sherman Act.

### a. *NaBanco* is Not Controlling.

Defendants maintain that the Court can dismiss the Sherman Act claim on the basis of the ruling by the Eleventh Circuit in *NaBanco,* 779 F.2d 592. Plaintiffs argue that *NaBanco* does not control this action because *NaBanco* decided an issue unrelated to this case. *NaBanco* involved a processing agent, Nabanco, which served the role of an acquiring bank in the Visa network, and challenged the interchange fee for Visa electronic transfers as both *per se* unlawful horizontal price fixing and an unreasonably anticompetitive restraint on trade under the rule of reason. *Id.* at 595. NaBanco alleged that Visa set interchange fees purely to prevent acquiring banks from competing with each other by individually negotiating lower interchange fees. *Id.* at 596.

The *NaBanco* court held that the interchange fee system did not violate section 1 of the Sherman Act. *Id.* at 605. The court first ruled that the interchange rules should be analyzed under a rule of reason rather than deemed a *per se* unlawful restraint. *Id.* at 601–02. In so holding, the court found that Visa integrated various functions in order to produce a product—a nationally accepted payment card—that was "truly greater than the sum of its parts." *Id.* at 602 & n. 17 (quoting *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 21–22, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979) (hereinafter *BMI*)). The court found that the interchange fee in particular was necessary to the creation of that product. *Id.* ("[U]niversality of acceptance—the key element to a national payment system—could not be guaranteed absent prearranged interchange rules."). Proceeding under the rule of reason, the court found the interchange fee lawful, upholding the district court's finding that the interchange fee was necessary to establish a universal payment card system, and so had procompetitive benefits which outweighed any anticompetitive effects. *Id.* at 605.

In *NaBanco*, both the decision to apply the rule of reason and the balancing of procompetitive benefits with anticompetitive effects under the rule turned on whether the interchange fee was necessary to the payment card system. It was, however, essential to the *NaBanco* court's finding of necessity that the interchange fee challenged was imposed only on transactions that were processed through a particular computerized service which Visa provided. *Id.* at 594. Member banks were free to negotiate interchange fees individually so long as they did not use Visa's computerized processing service. *Id.* The ability of member banks to bypass the present fees was crucial to the *NaBanco* court and dispositive to Visa's own expert. *See id.* at 600 n. 13. ("In [Professor] Baxter's opinion, such a fee is legally valid so long as all members of a four-party payment system have the option to bypass the required fee and negotiate their own fee."); *see also* William F. Baxter, *Bank Interchange of Transactional Paper: Legal and Economic Perspectives*, 26 J.L. & Econ. 541, 586 (1981).

Plaintiffs correctly argue that the *NaBanco* decision is not controlling of this case. The *NaBanco* court ruled that some form of prearranged interchange fee system—at least one from which banks could depart through individual negotiations—was necessary to establish a payment card system. *Id.* at 605 (noting that individual price negotiations are impractical, would result in instability, and could result in the demise of the product). The issue Plaintiffs present in this action is the legality of an interchange fee system from which member banks agree not to depart through individual negotiations. These claims are distinguishable, and the reasoning of *NaBanco* is not persuasive to the claim at issue here.[2]

**2.** Plaintiffs offer various other differences between the present action and *NaBanco*. Many distinctions are irrelevant for the issues faced by the court in this motion. Others, such as the allegation that "the interchange fee is a sharing of revenue and a compensation among competitors," (FAC at ¶ 20(b)), are not facts but rather conclusions and characterizations. Such unwarranted inferences do not bind this court simply because they are stated as allegations in the complaint. *Arpin*, 261 F.3d at 923.

Plaintiffs also attempt to distinguish their claims from those of the Plaintiff in *NaBanco* by arguing that the nature of their claim differs because they are merchants who accept credit cards rather than participants in the joint ventures of Mastercard or Visa. (Opp. Br. at 5–11.) It is true that the *NaBanco* Plaintiff suffered a different injury from the ones Plaintiffs claim here. As a business

**b. Plaintiffs' Antitrust Claims must be analyzed under "Rule of Reason," not "Per Se" Analysis.**

██ Plaintiffs argue that the restraint as alleged constitutes horizontal price fixing that should be deemed *per se* unlawful under section 1. Defendants maintain that the *per se* analysis is limited to conduct which is "plainly" or "manifestly" anticompetitive. (Br. at 9–10, citing *BMI*, 441 U.S. at 7–8, 99 S.Ct. 1551.)

In *BMI*, the Supreme Court cautioned against invoking the *per se* analysis based on an overly literal interpretation of "price fixing." *BMI*, 441 U.S. at 9, 99 S.Ct. 1551. In particular, the Court noted that "price fixing" is not *per se* unlawful in joint ventures between competitors to market a product different from anything an individual competitor could sell. *Id.* at 23, 99 S.Ct. 1551. The Court observed that joint ventures and other cooperative arrangements usually are not unlawful price fixing "where the agreement on price is necessary to market the product at all." *Id.*

██ Even taking all allegations in the complaint as true, the uniform interchange fee does not appear to be one of the few types of restraints exhibiting a "predictable and pernicious anticompetitive effect" without potential for procompetitive benefit. *See State Oil*, 522 U.S. at 10, 118 S.Ct. 275. Plaintiffs have not alleged an agreement directly setting the fees they pay, but only allege that the agreed-upon interchange fee largely determines, or "provides a floor" for, the merchant discount. (FAC at ¶¶ 16(b), 20(b).) Plaintiffs also admit that the existence of payment cards

has procompetitive benefit for them. (FAC at ¶ 23 ("Plaintiffs ... individually choose to accept Visa and Mastercard in order to attract business ....").) The payment cards provided by Defendants fall under the class of "joint ventures between competitors to market a product different from anything an individual competitor could sell" which is analyzed under the rule of reason. *BMI*, 441 U.S. at 23, 99 S.Ct. 1551; *see also United States v. Visa U.S.A., Inc.*, 163 F.Supp.2d 322, 343 (2001) (applying rule of reason to exclusionary membership rules of Visa); *NaBanco*, 779 F.2d at 601–02 (applying rule of reason to challenge to interchange fees). The agreement alleged in the complaint therefore calls for application of the rule of reason.

**c. Plaintiffs Sufficiently Allege Harm to Competition Caused by the Interchange Fee System.**

Because the interchange fees are not subject to a *per se* analysis, Plaintiffs must allege some actual harm to competition in the relevant market in order to establish their claim for a Sherman Act violation. *See Tanaka*, 252 F.3d at 1062; *cf. Bhan*, 929 F.2d at 1410 (finding no Sherman Act violation under rule of reason analysis because plaintiff failed to show that defendants' activity substantially restrained competition in the relevant market). Defendants argue that the complaint should be dismissed because Plaintiffs have not alleged any such harm to competition in the relevant market of bank acquisitions of payment card charge receipts from merchants. While the complaint does not explicitly allege that competition among

---

which provided only acquisition services, not card issuing services, the *NaBanco* plaintiff claimed that the interchange fee prevented it from competing effectively with institutions which provided both services. The merchant plaintiffs in this case allege that the lack of competition between acquiring banks causes

injury by inflating merchant discounts. While the injury which provides standing to the Plaintiffs here and in *NaBanco* may differ, the alleged "antitrust injury" to competition between acquiring institutions is the same in both actions. *See McGlinchy*, 845 F.2d at 811.

acquiring banks was harmed, Plaintiffs allege that interchange fees are not set by free competition. (FAC at ¶ 20(b),) that the merchant discounts are largely based on these interchange fees, (id.), that Defendants obtain unreasonable and unwarranted profits from the merchant discounts, (id. at ¶ 23), and that Plaintiffs and others similarly situated have been damaged by their payment of merchant discounts. (Id. at ¶ 26). Construing the complaint so as to do substantial justice, the court finds that Plaintiffs have fairly alleged that the interchange fees harm competition in market for acquisition of charge receipts. Fed. R. Civ. Pro. 8(f).

Defendants also base their motion to dismiss on the ground that Plaintiffs have not alleged *how* the interchange fees inhibit competition between acquiring institutions and artificially buoy the merchant discount. Plaintiffs have not set forth in the complaint their theory of the economic mechanism which would operate to drive down merchant discounts if the agreement on uniform interchange fees were not in place.

Plaintiffs make two allegations of fact which suggest a relationship between the interchange fee and merchant discount fees. Plaintiffs allege that past increases in the interchange fee by Mastercard and Visa have resulted in increases in deposit fees. (FAC at ¶ 22.) Plaintiffs also set forth an analogy to the system for clearing checks, which they allege is competitive and which does not generally impose either interchange fees or merchant discounts. (*See id.*)

■ Defendants spend a great deal of effort in their moving papers contesting Plaintiffs' economic theories of competition and fee pricing in the payment card system. Whatever the accuracy of Plaintiffs' theory, Defendants' challenges are not properly considered on a motion to dismiss for failure to state a claim. A complaint must simply give the Defendant fair notice of what the claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), *quoting Conley*, 355 U.S. at 47, 78 S.Ct. 99. There is no special rule requiring greater factual specificity in antitrust pleadings. *Datagate, Inc. v. Hewlett–Packard, Co.*, 941 F.2d 864, 870 (9th Cir.1991). Plaintiffs have alleged a nexus between the fixed interchange fee and competition among acquiring banks as to the merchant discount and have alleged facts which support the conclusion that there is a nexus. This is sufficient to satisfy the requirement that they plead an "unreasonable restraint of trade."

The Court finds that by alleging that Defendants' agreement on uniform interchange fees has the purpose and effect of reducing competition between acquiring banks and raising the merchant discounts, Plaintiffs have stated a claim under section 1 of the Sherman Act. The Court therefore DENIES Defendants' Motion to Dismiss as to Plaintiffs' First Claim For Relief.

### 2. Plaintiffs' Allegation of Differential Merchant Discounts Is Stricken.

■ Federal Rule of Civil Procedure 12(f) allows the court, upon motion by either party or on its own initiative, to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). Although motions to strike are generally looked upon with disfavor, they may be granted on the grounds of immateriality or impertinence when the allegations or language in question have no possible relation to. the controversy. *Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534–35, 114

S.Ct. 1023, 127 L.Ed.2d 455 (1994); *Le-Duc v. Kentucky Central Life Ins. Co.,* 814 F.Supp. 820, 830 (N.D.Cal.1992).

▬▬▬ Plaintiffs allege, within their First Claim for Relief for Violations of the Sherman Act, that Defendants, acting in combination, "set different deposit fees or ranges of deposit fees for different classes of customers of acquiring banks," presumably by setting different interchange fees for these different classes. (FAC at ¶ 20(a).) This allegation may simply be intended to provide factual support for the contention that the interchange fees are not set by competitive forces. (*See* FAC at ¶ 20(b).) The allegation of price differentials between customers does not, in itself, state a claim for an antitrust violation. *See Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 887 (9th Cir.1982); *USM Corp. v. SPS Technologies, Inc.,* 694 F.2d 505, 512 (7th Cir.1982) ("[N]o general principle of antitrust law forbids charging different prices to different customers"). The allegations of price differentials are therefore immaterial to the controversy at hand and must be stricken from the first amended complaint.

Plaintiff's allegations that Defendants set differential merchant discount rates, at page 8: lines 24–25 of the First Amended Complaint, are therefore ordered stricken from the First Amended Complaint.

### 3. Plaintiffs Allegations of Violations of the Bank Service Company Act Are Stricken.

▬▬ Plaintiffs further allege, also within their First Claim for Relief for Violations of the Sherman Act, that the relationship between defendant banks and Mastercard and Visa violates several provisions of the Bank Service Company Act, 12 U.S.C. §§ 1861, *et seq.* Plaintiffs allege that the services performed by Mastercard and Visa exceed the limits on the activities that a bank service company may perform

for a bank under 12 U.S.C. § 1863. (FAC at ¶ 20(c).) Plaintiffs also allege that defendant banks' acquired stock in Mastercard and Visa without providing prior notice to the appropriate federal agency, in violation of 12 U.S.C. § 1865(a). (FAC at ¶ 16(b).) Defendants move to dismiss these claims on the grounds that no private right of action exists under the Bank Service Company Act and that Plaintiffs have not alleged that Mastercard and Visa are bank service companies within the meaning of the act. (Reply Br. at 11–13.)

Plaintiffs admit there is no explicit private right of action under the Bank Service Company Act. However, relying on *J.I. Case Company v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), Plaintiffs argue that the Court should nonetheless allow the action because such a private remedy would prove "a most effective weapon in the enforcement of the [Act]." *Id.* at 428, 84 S.Ct. 1555. In *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), the Supreme Court explicitly rejected *Borak's* authorization for judicially-created private rights of action in any instance where such private remedies were necessary to effectuate the purposes of the statute. *Id.* at 287, 121 S.Ct. 1511. The *Sandoval* Court instead looked only to the text and structure of the statute at issue for Congressional creation of a private right of action. *Id.* at 288, 121 S.Ct. 1511.

▬▬▬ The Bank Service Company Act bears no indication that Congress intended a private right of action. The Bank Service Company Act nowhere identifies a class of individuals who it is designed to protect, but speaks only in terms of the limits on banks and bank service companies. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class

of persons.'" *Id.* at 289, 121 S.Ct. 1511 (quoting *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)). Second, the Bank Service Company Act provides an enforcement mechanism by explicitly subjecting each bank service company to regulation by the Board of Governors of the Federal Reserve System and the appropriate federal banking agency of its principal investor. 12 U.S.C. § 1867. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval,* 532 U.S. at 290, 121 S.Ct. 1511.

Plaintiffs claim that a private right of action under the Bank Service Companies Act is not novel. They do not, however, point to a single case in which a court has recognized such a private right of action. The Court finds that there is no private right of action under the Bank Service Companies Act, therefore the alleged violations of this act are immaterial to this case and should be stricken from the First Amended Complaint.

The Court therefore orders the allegations that Defendants' violated the Bank Services Companies Act, at page 9, lines 23–27 of the First Amended Complaint, be stricken from the First Amended Complaint.

### 4. Plaintiffs' Allegations that Defendants have Boycotted Banks That Reduce Merchant Discounts are Stricken.

Within their First Claim for Relief, Plaintiffs also allege that Defendants, acting in a combination of competing banks, "[boycott] banks and third parties who cut the amount of the deposit fee." (FAC at ¶ 20(d).) Plaintiffs make no allegations setting forth what behavior constituted the claimed boycotts or how the claimed boycotts injured competition. The bare assertion that Defendants engaged in a boycott presents nothing more than a legal conclusion that this Court is not bound to accept. *Arpin,* 261 F.3d at 923. Furthermore, that bare assertion does not give Defendants fair notice of what Plaintiff's claim is and the grounds upon which it rests. *See Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), *quoting Conley,* 355 U.S. at 47, 78 S.Ct. 99.

The Court therefore strikes this allegation from Plaintiffs' First Amended Complaint, at page 9, lines 21–22, with leave to amend to provide sufficient factual allegations to put the Defendants fairly on notice of the nature of the claim.

### D. Plaintiffs Have Failed to State a Claim for Relief Under the Clayton Act.

Section 7 of the Clayton Act prohibits mergers or acquisitions "in any line of commerce or in any activity affecting commerce in any section of the country, [where] the effect of such acquisition may be substantially to lessen competition or to tend to create a monopoly." 15 U.S.C. § 18. To state a claim under any antitrust laws, including section 7, a plaintiff must allege an "antitrust injury"— some harm to competition resulting from defendants' behavior. *Pool Water Products v. Olin,* 258 F.3d 1024, 1034 (9th Cir.2001). Under Section 7 of the Clayton Act, a plaintiff must allege that the acquisition will create an appreciable danger of anticompetitive consequences. *See California v. Sutter Health Sys.,* 130 F.Supp.2d 1109, 1119 (N.D.Cal.2001), citing *Philadelphia Nat'l Bank,* 374 U.S. 321, 362, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963) (requiring proof of anticompetitive consequences on motion for preliminary injunction.)

Defendants argue that Plaintiffs' claim under section 7 of the Clayton Act must be

dismissed because the complaint makes no mention how the defendant banks' acquisition of ownership interests in Visa and Mastercard would injure competition and therefore injure Plaintiffs. Plaintiffs argue that the banks' acquisitions created the entities that are used to fix prices. According to Plaintiffs, the existence of uniform interchange fees stems not from any acquisition but from the same alleged price fixing agreement that is the basis of Plaintiffs' Sherman Act claim. (Opp. Br. at 22.)

Plaintiffs did not adequately allege any harm to themselves or to competition in the relevant market resulting from the defendant banks' acquisition of ownership interests in Visa and Mastercard. Plaintiffs support their Section 7 claim by reference to separate, non-acquisition related conduct-the alleged price fixing of interchange fees which provide the basis for the Section 1 Sherman Act claims. (Opp. Br. at 22.) Any alleged harm to competition resulting from these actions is not sufficient to state a claim under section 7. The regulation of agreements, such as agreements collectively to fix prices, between business are not contained in the text of section 7 of the Clayton Act, which deals exclusively with acquisitions by businesses and the harms which result from these acquisitions. Any injury Plaintiffs suffered as a result of the interchange fees is entirely independent of harms they may have suffered as a result of the defendant banks acquiring an ownership interest in Visa and Mastercard.[3] Plaintiffs have failed to allege any harm resulting from the Defendant banks' having acquired an ownership interest in Visa and Mastercard.

The Court therefore **GRANTS** Defendants' Motion to Dismiss with prejudice as to Plaintiff's claim under section 7 of the Clayton Act.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART,** and allegations of pricing differentials and violations of the Bank Services Act and Bank Boycotting are ordered **STRICKEN** from the First Amended Complaint, as set forth above.

**IT IS SO ORDERED.**

---

**3.** Plaintiffs do not cite a single case in which acquisition by competitors of a distinct and noncompeting business provided the basis for a section 7 claim. Although Plaintiffs liken this case to *Citizen Publishing Co. v. United States,* 394 U.S. 131, 89 S.Ct. 927, 22 L.Ed.2d 148 (1969), that case involved two distinct aspects of a joint operating agreement between two newspapers: joint setting of subscription and advertising rates, which violated section 1 of the Sherman Act, and the acquisition of stock of one of the papers by the shareholders of the other, which violated section 7.