# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

REYN'S PASTA BELLA, LLC;
JEFFREY LEDON DEWEESE; BARRY
LEONARD, dba Critter Fritters; HAT-
IN-THE-RING INC., dba Eddie
Rickenbacker's,
              *Plaintiffs-Appellants,*

          v.

VISA USA, INC.; MASTERCARD
INTERNATIONAL, INC.; BANK OF
AMERICA N.A. (USA); WELLS
FARGO BANK NA; U.S. BANK, a
subsidiary of U.S. Bancorp,
              *Defendants-Appellees.*

No. 04-15581

D.C. No.
CV-02-03003-JSW

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
December 7, 2005—San Francisco, California

Filed March 27, 2006

Before: Betty B. Fletcher, David R. Thompson, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

3299

## COUNSEL

James A. Kopcke, Golden & Kopcke, San Francisco, California, and Richard J. Archer, Archer & Hanson, Occidental, California, for the plaintiffs-appellants.

M. Laurence Popofsky, Marie L. Fiala & Jonathan R. Dowell, Heller, Ehrman, White & McAuliffe LLP, San Francisco, California, for defendant-appellee Visa U.S.A. Inc.

Jay N. Fastow, Weil, Gotshal & Manges LLP, New York, New York, for defendant-appellee MasterCard International Inc.

Paula Quintiliani & Robert L. Stolebarger, Holme, Roberts & Owen L.L.P., San Francisco, California, and R. Steward Baird, Jr., Office of the General Counsel Wells Fargo Law Department, San Francisco, California, for defendant-appellee Wells Fargo Bank, N.A.

Sonya D. Winner, Covington & Burling, San Francisco, California, for defendant-appellee Bank of America, N.A.

Maurice J. McSweeney & Michael Lueder, Foley & Lardner, Milwaukee, Wisconsin, and Eileen R. Ridley, Foley & Lardner, San Francisco, California, for defendant-appellee U.S. Bank, N.A.

**OPINION**

BEA, Circuit Judge:

Plaintiffs Reyn's Pasta Bella, LLC; Jeffrey Ledon Deweese; Barry Leonard, dba Critter Fritters; and Hat-In-The-Ring Inc., dba Eddie Rickenbacker's appeal from the dismissal of their complaint seeking damages and injunctive relief for Defendants' alleged antitrust violations. They claim that Defendants Visa USA, Inc. (Visa); MasterCard International, Inc. (MasterCard); Bank of America, N.A. (USA); Wells Fargo Bank NA; and U.S. Bank, a subsidiary of U.S. Bancorp fixed prices on credit- and debit-card transactions in violation of section 1 of the Sherman Act, 15 U.S.C. § 1.[1] The district court found that Plaintiffs' claims were released by the class action settlement in *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) (*Wal-Mart I*), *aff'd sub nom.*, *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96 (2d Cir. 2005) (*Wal-Mart II*). We have jurisdiction under 28 U.S.C. § 1291 and we affirm. We hold that issue preclusion bars Plaintiffs from re-litigating the *Wal-Mart* courts' determination that Plaintiffs' price-fixing claims were properly released. We also hold, in the alternative, that Plaintiffs' claims are extinguished by the *Wal-Mart* settlement because the two actions share an identical factual predicate. Since Plaintiffs chose not to file an amended complaint based on acts occurring after the time period covered by the *Wal-Mart* release, the district court correctly dismissed their action.

**Facts and Procedural History**

Plaintiffs here purport to represent all merchants nationwide who currently have a contract with one or more of Visa and MasterCard's member banks for credit and debit transactions. To understand Plaintiffs' claims, it is necessary to

---

[1]Unless otherwise noted, all statutory references are to 15 U.S.C.

describe how a consumer pays for goods with a credit card or debit card.[2]

Visa and MasterCard do not issue credit cards and debit cards directly. Rather, they coordinate the issuance of credit and debit cards by their members, which include many of the nation's largest banks, under common card brands and rules.

Their member banks play two roles in a sale of goods to a Visa or MasterCard user. First, one of their members (the issuing bank) issues the consumer his or her credit or debit card. Second, it or another Visa or MasterCard member bank (the acquiring bank) contracts with the merchant to accept payment through Visa or MasterCard.[3]

---

[2]The following background on Visa and MasterCard draws on the *Wal-Mart I* court's recitation of similar allegations made against Visa and MasterCard in its order granting the *Wal-Mart* plaintiffs' motion for class certification. *See generally In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 71-74 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001).

[3]For those interested in the workings of commerce, this is how a typical sales transaction works, as described in the opinion of the district court. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.* 259 F. Supp. 2d 992, 996 n.1 (N.D. Cal. 2003).

A consumer buys goods for $100 with a Visa or MasterCard provided by the issuing bank. The selling merchant takes the consumer's signed credit authorization and forwards it (usually electronically, to be followed by a paper trail) to the merchant's bank (the acquiring bank). The acquiring bank pays the merchant $98.40 in exchange for title to the goods sold; the 1.6% discount is the "merchant discount." The acquiring bank sells the title to the goods to the consumer's issuing bank for $98.75. The issuing bank charges the consumer $100 and transfers title to the goods to the consumer. The $1.25 difference is the "interchange rate."

Thus, the consumer pays $100; the merchant gets $98.40; the consumer's ("issuing") bank gets $1.25 and the merchant's ("acquiring") bank gets $0.35. The difference between what the two banks keep represents the difference between the credit risk the issuing bank runs with the consumer (greater) and the credit risk the acquiring bank runs with the issuing bank (lesser).

As described in the footnoted hypothetical, the typical credit-card transaction involves more than a consumer buying goods from a merchant. The transaction is actually a chain of transactions among the merchant, who sells the goods to the acquiring bank, who sells the goods to the issuing bank, who sells the goods to the consumer. At each step, the buyer must purchase the goods at a price lower than its selling price—or make no profit.

Plaintiffs-merchants allege that price-fixing by Defendants and their member banks of the interchange rate at 1.25% results in the merchant upstream receiving less for its goods from the acquiring bank. Less, that is, than the merchant would receive were there to be competition at the interchange-rate level and the rate were to be driven down to 1.00% or less by such competition. The lower the cost of the interchange rate, the less would have to be taken ("discounted") from the merchant. Plaintiffs thus claim to have stated a cause of action for price-fixing under section 1 of the Sherman Act, 15 U.S.C. § 1.

Defendants moved to dismiss Plaintiffs' complaint for failure to state a claim. The court granted in part, and denied in part, Defendants' motions. Pertinent here, the court held that Plaintiffs had stated a claim for price-fixing on the theory described above. *See Reyn's Pasta Bella,* 259 F. Supp. 2d 992, 1000-01 (N.D. Cal. 2003). The court dismissed or struck each of Plaintiffs' other substantive allegations. *See id.* at 1001-04.

Meanwhile, in the Eastern District of New York, the lead plaintiffs in the *Wal-Mart* class action had negotiated a global settlement of that class' claims. *See Wal-Mart I*, 297 F. Supp. 2d at 508. There, the court had certified a nationwide class of plaintiffs under rule 23(b)(3). *See In re Visa Check*, 192 F.R.D. at 90. The class consisted of all merchants who were forced to accept Visa and MasterCard's debit cards as a condition of accepting their credit cards from October 25, 1992

to June 21, 2003. *See id.*; CV-96-5238, Notice of Settlement of Class Action (E.D.N.Y. June 13, 2003). The *Wal-Mart* class thus included every member of the putative class action that Plaintiffs bring here.[4] In *Wal-Mart*, the plaintiffs alleged that Visa and MasterCard obtained excessive discount fees (1.6% in the hypothetical above) by "tying" their debit cards to their credit cards and conspiring to monopolize the debit-card market. *See Wal-Mart I*, 297 F. Supp. 2d at 507. On the eve of trial, the *Wal-Mart* class action settled for more than three billion dollars and significant injunctive relief. *See id.* at 508. The *Wal-Mart* settlement agreements[5] include releases that purport to absolve Visa, MasterCard, and the Banks of all antitrust liability arising out of conduct, prior to January 1, 2004, that is related to the claims asserted in the *Wal-Mart* class action.

Plaintiffs were *Wal-Mart* class members. Rather than opt out of the *Wal-Mart* class, they appeared through counsel at the settlement fairness hearing and raised several objections. On December 19, 2003, the *Wal-Mart I* court approved the settlement over their objections. *See Wal-Mart I*, 297 F. Supp. 2d at 526, *aff'd*, 396 F.3d at 124. In approving the settlement, the *Wal-Mart I* court expressly determined that Plaintiffs' price-fixing claims were released. *See id.* at 513-15.

In June 2003, Defendants renewed their motions to dismiss and asserted that the release in the proposed *Wal-Mart* settlement would bar Plaintiffs' claims once it was approved. On October 3, 2003, the district court heard argument on the effect of the *Wal-Mart* release. Then, on January 14, 2004, the

---

[4]As we explain below, the fact that Plaintiffs' class includes all merchants who *currently* have contracts with Visa and MasterCard does not broaden the temporal scope of Plaintiffs' claims to include a period after the period covered by the *Wal-Mart* class action.

[5]Visa and MasterCard entered into parallel settlement agreements with identical terms. For convenience, we refer to the agreements simply as "the settlement."

court ordered Plaintiffs to show cause why their action should not be dismissed. After further briefing, the court dismissed Plaintiffs' complaint with prejudice on March 4, 2004. Plaintiffs filed a timely notice of appeal.

## Analysis

The application of issue preclusion and claim preclusion is reviewed *de novo*. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 849-50 (9th Cir. 2000). While the court's two-page order of dismissal does not explicitly state that it is applying issue preclusion, we may affirm on any ground that is supported by the record. *See, e.g.*, *McClure v. Life Ins. Co. of No. Am.*, 84 F.3d 1129, 1133 (9th Cir. 1996).

## A.

First, we hold that Plaintiffs may not collaterally attack the *Wal-Mart* settlement. "[A] class member who is represented by counsel during a class action settlement hearing . . . cannot attack the settlement collaterally . . . ." *Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d 1295, 1299 (9th Cir. 1981) (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)). Here, Plaintiffs' appearance through counsel at the *Wal-Mart* fairness hearing binds them to the *Wal-Mart* settlement and all of its preclusive effects.

**[1]** The district court correctly dismissed Plaintiffs' action as barred by the *Wal-Mart* settlement. Issue preclusion bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

*Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005).

**[2]** First, the *Wal-Mart* courts' decision that the settlement covered, and thereby released, Plaintiffs' claims in the Northern District of California was necessary to their final judgment that approved the *Wal-Mart* settlement. The issues Plaintiffs raised all relate to the *Wal-Mart* settlement, its scope, and its substantive and procedural fairness.[6] In approving the settlement as "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e)(2), the *Wal-Mart* courts necessarily had to adjudicate the objections Plaintiffs raised, including whether the *Wal-Mart* settlement released Plaintiffs' price-fixing claims.

**[3]** Second, the *Wal-Mart* courts' approval of the settlement

---

[6]To determine what issues were actually litigated in the *Wal-Mart* courts, we take judicial notice of Plaintiffs' briefs in those courts and the transcript of the *Wal-Mart* fairness hearing. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002). Those briefs reveal that Plaintiffs litigated at the *Wal-Mart* fairness hearing virtually all of the issues they raise here. They litigated whether the *Wal-Mart* settlement released their price-fixing claims, whether the Banks could be released when they were not named as defendants in the *Wal-Mart* action or listed in the opt-out notice, whether the *Wal-Mart* settlement was fair and adequately represented Plaintiffs' claims, and whether Defendants should be judicially estopped from treating Plaintiffs' claims as factually related to the claims asserted in *Wal-Mart*.

Defendants have requested that we take judicial notice of several other pleadings, memoranda, expert reports, etc., from the *Wal-Mart* litigation. We may take judicial notice of court filings and other matters of public record. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998). Here, Defendants' request is limited to documents filed in the *Wal-Mart* litigation. While some of these documents are filed under seal, they nonetheless are readily verifiable and, therefore, the proper subject of judicial notice. Accordingly, Defendants' request for judicial notice is granted.

Plaintiffs have also requested that we take judicial notice of documents filed in the *Wal-Mart* litigation. For the reasons just stated, Plaintiffs' request for judicial notice is also granted.

constituted a final judgment on the merits. *See Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1383 (9th Cir. 1978).

**[4]** Third, Plaintiffs were parties to the *Wal-Mart* proceeding by virtue of their membership in the class and appearance through counsel at the fairness hearing. *See Dosier*, 656 F.2d at 1299. Thus, we find all three elements of issue preclusion to be satisfied.

Plaintiffs argue against application of issue preclusion solely from the maxim that a court rendering a judgment cannot predetermine its res judicata effects. *See Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985) (referring to this maxim in dicta)*; In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 345 (N.D. Ga. 1993) (reciting this maxim in opinion on the fairness of a class-action settlement, but nonetheless opining that certain claims were not released). However, Plaintiffs brought about the *Wal-Mart* courts' predetermination of their judgments' preclusive effects by raising the issue in the *Wal-Mart* litigation as opposed to waiting to attack collaterally those judgments in the Northern District of California. We have rejected arguments like that of Plaintiffs here in *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1279 n.7 (9th Cir. 1992), where we reasoned:

> [A group of class members] contends that if the district court [in a prior proceeding] is allowed to resolve the questions of the [class representative's] authorization to compromise its claims and whether the [class representative] adequately represented its members' interests, it will necessarily determine the preclusive effect of its own judgment, thereby prohibiting the [group of class members] from attacking the judgment in a subsequent proceeding . . . .
>
> . . .

> Having chosen to appear before the district court [in the former proceeding] and contest [the class representative's] authority and the adequacy of its representation, the [group of class members] cannot now be heard to complain that because the district court ruled against them, the court unlawfully prohibited its members from attacking the district court's judgment in a subsequent proceeding.

Here, Plaintiffs chose to challenge directly in the *Wal-Mart* litigation whether the settlement released their claims; they do not get a second bite at the apple to challenge collaterally the same issue in the Northern District of California.

**[5]** We believe issue preclusion is fully applicable to the *Wal-Mart* courts' determination that Plaintiffs' price-fixing claims fell within the scope of the release. *See Nottingham Partners*, 925 F.2d at 33 ("The [certifying court] . . . explicitly found that the claims here asserted arose out of the same transaction as the claims in the class action, and this determination is equally entitled to preclusive effect." (citation omitted)). Seven years into the *Wal-Mart I* litigation, the district court reviewed the claims that are now before us and found that they shared an identical factual predicate with the claims asserted in *Wal-Mart*. *See Wal-Mart I*, 297 F. Supp. 2d at 513-14. Given the *Wal-Mart* court's long familiarity with the litigation, it is at least as well-equipped as we are to determine the scope of the release. Moreover, Plaintiffs had a full opportunity to be heard on this issue by the *Wal-Mart* courts. They chose not to press this issue on appeal to the Second Circuit. *See Wal-Mart II*, 396 F.3d at 107 n.14 (noting that Plaintiffs abandoned the issue). Since all of the elements of issue preclusion are met, we hold that Plaintiffs are collaterally estopped from relitigating the scope of the release here.

**B.**

**[6]** Even if issue preclusion were not applicable, we would nonetheless find that Plaintiffs' claims were released. "The

weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action . . . .' " *Class Plaintiffs*, 955 F.2d at 1287-89 (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 676 F.2d 456, 460 (2d Cir. 1982)). A class settlement may also release factually related claims against parties not named as defendants, such as the Banks here. *See id.* Thus, the *Wal-Mart* release encompasses Plaintiffs' claims if they arise from an identical factual predicate as the claims asserted by the *Wal-Mart* class.

As discussed above, Plaintiffs' claim is that Defendants' uniform interchange rates caused the class members to pay excessive merchant-discount fees for the use of credit and debit cards. They argue that the uniform interchange rates "set a floor" under the merchant-discount rates, thereby keeping them above the price that would obtain in a competitive market.

In the operative class complaint in *Wal-Mart*, the plaintiffs sued Visa and MasterCard on two theories of antitrust liability. First, the *Wal-Mart* plaintiffs claimed Visa and Master-Card's "honor-all-cards" rule, which required merchants to accept Visa and MasterCard debit cards as a condition of accepting their credit cards, was an unlawful tying arrangement. Second, they claimed that Visa and MasterCard, through various practices including the fixing of the interchange rate, conspired to monopolize the debit-card market. In other words, the *Wal-Mart* plaintiffs complained that Defendants were extracting monopoly profits through the tying arrangement and unlawfully attempting to control the debit-card market.

While the *Wal-Mart* plaintiffs focused largely on the Defendant's actions in the debit-card market, they claimed that Defendants' anti-competitive conduct raised the discount fees in both the debit-card and credit-card markets. First, the

*Wal-Mart* plaintiffs expressly alleged that Visa and Master-Card's member banks collectively fixed the interchange rate and that the fixed interchange rate accounted for the bulk of the merchant-discount fees. *See* CV-96-5238, Second Amended Consolidated Class Action Complaint 45 (E.D.N.Y. May 26, 1999). Second, the notice of the pending *Wal-Mart* class action informed the class members that plaintiffs were seeking damages that the excessive merchant-discount fees on credit and debit transactions had caused the class. *See* CV-96-5238, Notice of Pendency of a Class Action 3 (E.D.N.Y. June 21, 2002). Third, in litigating their section 1 claim, the *Wal-Mart* plaintiffs sought to prove that the tying arrangement elevated interchange rates for credit cards and debit cards. *See, e.g.*, *In re Visa Check*, 192 F.R.D. at 74-76 (summarizing the duel of experts on whether credit card interchange rates would be higher or lower in the absence of the tying arrangement). As to their section 2 claim, the *Wal-Mart* plaintiffs argued they had standing to challenge Defendants' attempted monopolization because the elevated interchange fees harmed them directly. *See* CV-96-5238, Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment and Motion for Partial Summary Judgment at 26 n.62 (E.D.N.Y. July 5, 2000). Fourth, the *Wal-Mart* settlement compensated class members, including Plaintiffs here, in proportion to the excess fees they paid on credit and debit transactions. *See* Plan of Allocation § 3.1, CV-96-5238, (E.D.N.Y. Aug. 18, 2003).

**[7]** Thus, the *Wal-Mart* class action was predicated on the harm merchants suffered from the elevated interchange fees caused by Defendants' anti-competitive conduct. While Plaintiffs seek to hold Defendants liable by positing a different theory of anti-competitive conduct, the price-fixing predicate (price-fixing interchange rates) and the underlying injury are identical. Therefore, Plaintiffs' claims were extinguished by the *Wal-Mart* settlement. *See, e.g.*, *Howard v. America Online, Inc.*, 208 F.3d 741, 746-47 (9th Cir. 2000) (settlement

of class action raising state-law claims for unfair billing practices released RICO claims based on the same practices).

## C.

Next, Plaintiffs argue the *Wal-Mart* release does not bar any claims based on Defendants' alleged fixing of the interchange rates after January 1, 2004. We need not address the question because Plaintiffs have failed to allege any such claims. "[T]he general rule in private antitrust actions is that the plaintiff may not recover damages arising from acts committed after the filing of the complaint, even when those acts are alleged to be part of a continuing conspiracy or course of conduct." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1056 (9th Cir. 1981). Here, Plaintiffs last amended their complaint on May 16, 2003. Thus, their complaint is limited to seeking damages arising from acts committed before that time.

Plaintiffs' prayer for injunctive relief under section 16 of the Clayton Act, 15 U.S.C. § 26, does not change this analysis. It is true that Plaintiffs' Second Amended Complaint refers to "continuing" harm and "continuing" acts by the Defendants, such as are required for injunctive relief under the Clayton Act. However, a plaintiff does not have a stand-alone cause of action under 15 U.S.C. § 26. *See, e.g.*, *Catlin v. Washington Energy Co.*, 791 F.2d 1343, 1350 (9th Cir. 1986). Therefore, Plaintiffs' prayer for injunctive relief is insufficient to state a claim based on acts committed after January 1, 2004; the remedy, if any, lies in the role of supplemental pleading under Fed. R Civ. P 15(d). *See William Inglis & Sons Baking Co.*, 668 F.2d at 1056-58.

Although Plaintiffs' complaint is susceptible of amendment, we generally will not remand with instructions to grant leave to amend unless the plaintiff sought leave to amend below. *See Alaska v. United States*, 201 F.3d 1154, 1163-64 (9th Cir. 2000). Plaintiffs here did not request leave to amend

from the district court, despite having the opportunity after the district court ordered them to show cause. Therefore, we decline to remand with instructions to grant leave to amend. If Plaintiffs wish to state a claim based on Defendants' alleged price-fixing after January 1, 2004, their proper course is to file a fresh complaint.[7]

Plaintiffs also argue that the *Wal-Mart* settlement is void for illegality. They offer no authority or explanation for the sweeping proposition that an antitrust settlement is void if it fails to enjoin future violations in perpetuity. We therefore reject Plaintiffs' void-for-illegality argument.

[8] Finally, Plaintiffs request that we judicially estop Defendants from relying on the *Wal-Mart* release. As noted above, Plaintiffs raised this issue in their brief before the Second Circuit in *Wal-Mart II*. While the Second Circuit did not explicitly address the issue, it necessarily declined to apply judicial estoppel in affirming the *Wal-Mart I* court's conclusion that Plaintiffs' claims were released. Therefore, this issue is also precluded by the final judgment in *Wal-Mart*. *See United States v. Arnett*, 327 F.3d 845, 848 (9th Cir. 2003) (reasoning that issue preclusion applies when the decision from a prior proceeding implicitly decided the issue to be collaterally estopped).

[9] In conclusion, we affirm the district court's dismissal with prejudice. We apply the doctrine of issue preclusion to bar Plaintiffs from relitigating their objections to the *Wal-Mart* settlement. In the alternative, we hold that the *Wal-Mart* release extinguishes Plaintiffs' claims because they arise from the same factual predicate and span the same time period. Therefore, the district court correctly found Plaintiffs' claims to have been extinguished by the judgment of the *Wal-Mart* courts.

---

[7]Of course, we express no opinion on the validity or timeliness of any such complaint, it not being before us.

**Requests for judicial notice GRANTED; order of dismissal AFFIRMED.**